## THE TRUSTEES OF HAMILTON COLLEGE, *appellants, vs.* ALVAN STEWART, *respondent.*

The endowment of a literary institution is not a sufficient consideration to uphold a subscription to a fund designed for that object.

And although there is annexed to the subscription a condition that the subscribers are not to be bound unless a given amount shall be raised, no request can be implied therefrom against the subscribers that the institution shall perform the services and incur the expenses necessary to fill up the subscription.

Accordingly, where the defendant subscribed $800 to a fund for the payment of the salaries of the officers of Hamilton College, and a condition was annexed that the subscribers were not to be bound unless the aggregate amount of subscriptions and contributions should be $50,000; *held,* that there was no consideration for the undertaking and that no action would lie upon it, although there was evidence tending to show that the whole amount had been subscribed or contributed according to the terms of the condition.

THIS case was before the late court of errors, and is reported in 2 *Denio,* 403. After the decision of that court as there reported, the plaintiffs again brought the cause to trial at the Oneida circuit, before GRIDLEY, Cir. Judge, in September, 1846, and by consent the facts were read to the jury from the error book upon which the cause had been argued in the court of errors. There was some additional testimony not material to the question on which the case was decided in this court. The circuit judge nonsuited the plaintiffs, and his decision was affirmed by the supreme court. The plaintiffs brought error to this court.

Trustees of Hamilton College *v.* Stewart.

*C. P. Kirkland,* for the plaintiffs in error.

*Luther R. Marsh,* for the defendant in error.

GARDINER, J., delivered the opinion of the court. The conclusive objection to the maintenance of this action is the want of consideration for the undertaking of the defendant. This is not a case of mutual promises where the undertaking of one party is the consideration for the promise of the other. (*Livingston* v. *Rogers,* 1 *Caines' Rep.* 534; *Chit. Pl.* 296.) This was so adjudged by the supreme court when the case was before them upon demurrer to the declaration. As I read the agreement, there is no engagement whatever upon the part of the plaintiffs, or any other person, to do or forbear to do any thing as a consideration for the promise of the defendant. The clauses in the instrument to which we are referred by the counsel for the plaintiffs, are mere conditions limiting the liability of the defendant, or designating the purpose to which his money, when paid, is to be applied. The subscribers say that they will not pay any thing unless the sum of $50,000, including their subscription, shall be invested, and the interest shall be applied to the payment of the salaries of the officers. But the corporation do not undertake that that sum shall be subscribed, or that any other person will *endeavor* to procure subscriptions, or that they will make the investment or appropriate the income of the fund to the purpose designated. The corporation have not executed the agreement, and there is no evidence that they knew of its existence until after the subscription of the defendant. The first count of the declaration, which is founded upon mutual promises, is not therefore sustained by the agreement.

The second count, upon which the chief reliance is placed, seems to have been framed with a view to the suggestions of C. J. Nelson contained in his opinion attached to the case. This count proceeds upon the supposition that the agreement furnished evidence of *a request* to the plaintiffs by the defendant to perform certain services, in consideration of which he prom-

ised to pay them the sum of $800. If this is the true construction of the writing, the right of the plaintiffs to the subscription money is unquestionable. The cases referred to by the chief justice, and others cited upon the argument, are quite conclusive to show that the value of the services, or the amount of the consideration, is of no importance where a stipulated sum is agreed to be paid for the performance of a specific service. (*Sturlyn* v. *Albany, Cro. Eliz.* 67; *Id.* 469; 1 *Sel.* 32; *Saund. Pl. & Ev.* 147.) In looking at the contract, however, we meet with the same difficulty, in another form, to which I have alluded in reference to the first count of the declaration. There is no *request* by the subscribers that the plaintiffs shall do any thing. They agree to pay the trustees of Hamilton College the sums by them severally subscribed, and then add, " that we shall not be holden to pay the sum subscribed by us, unless the aggregate of our subscriptions and of contributions to this object shall, by the 1st of July, 1834, amount to $50,000," &c. The trustees are made, by the subscription, the mere depositories of the money, and nothing more. If any other person had been designated, the agreement would have been as effectual for all the purposes contemplated, as in its present form. There certainly is no express request to the plaintiffs, or the trustees as their representatives, to procure subscriptions or contributions. Nor can a request be implied from the agreement. The endowment of the college was, in legal contemplation, no benefit to the subscribers. The public advantage arising from the diffusion of knowledge and the advancement of science, however important in themselves, have not been held a sufficient consideration alone to uphold an agreement of this character. (2 *Pick.* 580.) We cannot therefore imply a request from the beneficial nature of the services to the subscribers. Nor is it to be inferred from the object to be obtained by the subscription. The purpose, as stated by the plaintiffs in their declaration, " was to endow the institution, by providing a fund for the payment of its officers." In effect, it was to add $50,000 to the permanent funds of the college, without abstracting any thing from those already accumulated. How then are we authorized to imply a request by the subscri

bers, that the plaintiffs should, as they allege, " at great labor and expense," procure these subscriptions ? Every dollar thus expended required an equivalent sum to be raised, in order to put the institution upon the footing contemplated by the subscribers.

In truth, when carefully examined, the agreement of the defendant amounts to a promise to give $800 on certain conditions. When these conditions are fulfilled, no matter by whom, or at whose procurement, the donor, according to the letter of his promise, is to pay. It cannot be doubted that if an individual or an association had, subsequent to the subscription of the defendant and prior to July, 1834, without the request or knowledge of the plaintiffs, invested $50,000 for the purpose mentioned in this contract, and obtained the certificate of Mr. Hunt, the letter and spirit of the conditions precedent upon which the gift depended would have been complied with. If the plaintiffs subsequently accepted the money or securities, they of course would take them subject to the trust annexed by the donors to the gift. If they declined, the money would revert, and the depositary, whoever he might be, would hold it in trust for the use of the subscribers.

These remarks, if well founded, dispose of the case. The principles involved in the case are, however, of general interest, and I will therefore advert to some of the principal authorities that have been pressed upon our consideration. In *McCauley* v. *Billinger*, (20 *John. R.* 89,) a committee was appointed at a church meeting to receive subscriptions, and to contract for the repairs of the church in the manner set forth in the subscription. The subscription is not given, but the court held " that the consideration for the defendant's promise, was the repairing of the church. That the defendant by signing the paper, *sanctioned* the acts of the *meeting.*" According to the view of the court, it was in effect a written request to the committee to make repairs, in consideration of which the defendant undertook to pay. This is the strongest case for the plaintiffs in our reports. In the case of the *Amherst Academy* v. *Cowles*, (6 *Pick. R.* 427 *to* 438,) the action was upon a note payable to the plaintiffs, given for a subscription to a fund for the use of a

college which, at the time of the subscription, had not been incorporated. The plaintiffs were to have the property of the fund, and the *management* thereof according to the provisions of the constitution subscribed by the defendant, and when the institution was incorporated, it was provided that the plaintiff *should* transfer to the college the whole fund and the evidences thereof. These duties were performed, and subsequently the defendant gave his note, and thereby acknowledged that he had received value, and that it was given in pursuance of his previous covenants. It was a manifest instance of services performed at the request and by the direction of the defendant, for which an action might have been sustained upon the subscription itself, independent of the note. It resembles in this particular the case of *R. Society of Whitestown* v. *Stone*, (7 *John. R.* 113,) which was referred to by the court in their decision. *Limerick Academy* v. *Davis*, (11 *Mass. R.* 114,) was an action upon a subscription very similar to the one before us. Judgment was given for the defendant. The court held " that it was a promise to give, connected with a similar promise of others to give for the same purpose ; at most it was a donation to come into operation at the will of each subscriber." In *Bridgewater Academy* v. *Gilbert*, (2 *Pick.* 579,) the subscription upon which the action was brought was as follows : " We the subscribers, being desirous that the academy edifice should be rebuilt immediately, do hereby promise to pay to the committee which may be chosen by the trustees of the B. Academy, the sum set opposite our names for the above purpose." The edifice was rebuilt. And the court held, " that the subscription paper would not sustain the action. That providing materials upon the faith of the subscription, was not sufficient to show that the expenses were incurred at the implied request of the defendant." If a request could not be inferred from that paper, it is impossible to say that it can be implied from the one under consideration. Indeed, all the authorities, it is believed, will be found consistent with the result to which we have been led by the terms of the agreement.

If, with C. J. Nelson, we find that the defendant agreed to

pay $800 provided the plaintiffs *would* procure subscriptions, and *should* afterwards invest the money, &c.; this, according to the cases, would amount to a request to perform those services, and the defendant would be liable. With all our anxiety to sustain this contract, we do not think it susceptible of that construction. And our conclusion upon this point renders it unnecessary to examine the other objections to the action suggessed upon the argument.

Judgment affirmed.