Trustees of the R. P. D. Church of Rochester agt. Hardenbergh.

## SUPREME COURT.

### The Trustees of the Reformed Protestant Dutch Church of Rochester agt. Eugene Hardenbergh.

*Subscription to the building of a church.*

A subscription for the purpose of building or repairing a church in the following form, to wit: "We, the undersigned, do hereby, for value received, promise to pay to the consistory of the Reformed Protestant Dutch Church, of the town of Rochester, the several sums set opposite our respective names, for the purpose of paying off the indebtedness of said church, on condition that the sum of $5,000 be subscribed therefor," expresses a sufficient and valid consideration; and where the condition has been complied with, becomes a binding obligation at law upon each subscriber.

*Argued and decided at the General Term of the Third Department, in June,* 1874, Miller, Bockes *and* Boardman, *Justices. Judgment affirmed. No opinion written.*

This action comes up to be heard in the first instance at the general term on a case and exceptions. A verdict was rendered for the plaintiff at the Ulster circuit, in January, 1873, judge Danforth presiding, and judgment has been entered as security.

The facts, which were proven on the trial, are as follows: That the plaintiff is a duly incorporated religious society under the statutes of this state; that the defendant is a member of said society, and a communicant of the church. The society owned a church and a parsonage house and farm. Repairs being needed to the church and parsonage, a committee was appointed to make them, consisting of the defendant and two others, but the defendant was the acting committee.

Trustees of the R. P. D. Church of Rochester agt. Hardenbergh.

A debt was contracted in making these repairs amounting to about $10,000, part of which was paid by a sale of church lands, and the church undertook to raise the residue by subscription. A resolution for that purpose was passed, and a committee appointed to procure the subscriptions. A book was prepared for these subscriptions, with the following heading:

"We, the undersigned, do hereby, for value received, promise to pay to the consistory of the Reformed Protestant Dutch Church of the town of Rochester, the several sums set opposite our respective names, for the purpose of paying off the indebtedness of said church, on condition that the sum of $5,000 be subscribed therefor."

The committee called on the defendant at the outset of the subscription, and he promised to subscribe $500. They then subscribed themselves, and went through the congregation and procured within $500 of the amount required to be raised. They then called on the defendant again and asked him to subscribe the $500, as he had promised. He said he would not do that, but would subscribe $250, and did so. He said he would pay that.

The committee then continued to procure further subscriptions, until the amount reached $5,190. They spent two or three months in this business.

The subscription book was put in evidence and shows an aggregate of $5,190. The same book contains the credits for payments by the subscribers, which was also put in evidence, but by an error in printing was omitted and appears at the end of the case.

The court, under a captious objection by the defendant, required the plaintiff to give proof of the actual signing of the subscription. This was rendered difficult by the fact that the principal man of the committee, who was also treasurer of the society, had died after the suit was commenced. To overcome this difficulty, the plaintiff proved the fact that he was treasurer, that he kept an account of the moneys collected

and received, and his entries of the amounts received, which corresponded with the subscriptions. The witness who testified to this made many of the collections himself.

The proof showed that there were only two subscriptions that were not proved, either by actual proof of the signing, or proof of the handwriting, or the payment by the subscriber, viz.: George Roper, five dollars, and Jeremiah Schoonmaker, twenty-five dollars; total, thirty dollars. For all the others, except the defendant, the church had either received the money or had taken notes and was receiving the interest.

The actual moneys received amounted to $4,986.92, which includes some interest; and the proof also shows that the church had paid out $4,966.62.

Upon this evidence the case was submitted to the jury, upon the question whether the plaintiff had complied with the condition of the subscription, by procuring the requisite amount to be subscribed, and the jury found for the plaintiff.

The principal defense was that the contract was without consideration and void.

The defendant also objected to showing compliance with the condition in the contract by proof of actual payment of the subscriptions.

The exceptions relate entirely to these two points.

The court held that the agreement was valid on these grounds:

1. The consideration expressed in the instrument itself being "for value received," which value was shown to be the improvement of the property of the society of which he was a member, and which improvements he had requested and directed himself.

2. The implied request contained in the subscription, that the trustees should raise the fund to pay the debt of the society, and the labor performed and trouble and expense to which the trustees were put in raising the amount on the faith of this engagement.

3. The moral obligation which rested upon the defendant

as a member of the society, a corporator and legal voter therein, and the person who had requested, directed and superintended all the improvements which created the debt, as a consequence of which he had a new house of worship in which to attend divine service, to contribute to its payment.

*A. Schoonmaker, Jr.*, attorney for plaintiff.

I. The agreement entered into by the defendant, and upon which the action is brought, is based upon an adequate and lawful consideration, and is a valid and binding obligation.

As well expressed in the charge, the defendant's agreement was, "For value received, I promise to pay to the consistory of the Reformed Protestant Dutch Church of Rochester the sum of $250, for the purpose of paying off the indebtedness of said church, an indebtedness which I actively assisted in making while I was a member of said church and occupying a pew therein, and which debt I was, under moral obligation, to assist in liquidating, providing the officers of said church will circulate the paper and obtain the sum of $5,000, including my subscription, with which the church shall pay off its debt."

The canon of construction which applies to this agreement, and by which we are to arrive at its true import, is furnished by the leading case of *Barnes* agt. *Perine* (2 *Kern.*, 18). The court say: "If a good consideration for the promise can be proved, either in or out of the instrument, it is sufficient." And again, "the request and promise would have been valid if both had been verbal, and the written promise may be sustained by evidence of a verbal request, or by proof of any other consideration sufficient in law." And again, "a consideration for an undertaking may consist in a benefit or advantage to the promissor, or any obligation, harm, inconvenience or disadvantage incurred by the promisee upon the faith of the promise; and in the absence of fraud or other undue influence, the validity of the promise does not ordi-

narily depend upon the amount or value of the consideration as an equivalent for the value of the thing promised."

And further, "the real party in interest, and both in the promise and in the action, is the corporation; and whatever was undertaken or done by the trustees, or by the building committee, was done and undertaken by the corporation. The acts of the agents were the acts of the corporation; and if any act was done or obligation incurred by either of their agents, as such, at the request of the defendant and relying upon his promise, it will furnish a good consideration for his agreement to pay."

The sole inquiry is, then, whether, under these principles, any legal consideration can be found either in the instrument or in the testimony.

II. The agreement being by its terms "for value received," expresses on its face a legal and sufficient consideration.

In the *Trustees of the First Baptist Society in Syracuse* agt. *Robinson* (21 *N. Y.*, 234), which was an action on a church subscription, the subscribers, "in consideration of one dollar," agreed to pay the sums set opposite their respective names.

The court said, "there is a sufficient consideration expressed in the instrument to uphold the promise to pay of the subscribers."

In *Prindle* agt. *Caruthers* (15 *N. Y.*, 425), the action was on an instrument in these words:

"For value received, I promise to pay to Henry Caruthers or his wife Elizabeth, annually, on the first day of April, during the life of the longest liver of them, the sum of two hundred dollars, if called for or needed."

The court say, "the paper signed by the defendant, * * when produced, would sustain the plaintiffs' case."

In *Miller* agt. *Cook* (23 *N. Y.*, 495), the words "for value received," in a guaranty of a promissory note, were held to be a sufficient and adequate expression of the consideration

Trustees of the R. P. D. Church of Rochester agt. Hardenbergh.

within the statute of frauds, which required a note or memorandum to be subscribed *expressing the consideration.*

The same decision upon the same words has also been made in many other cases (*Watson's Ex.* agt. *McLaren*, 19 *Wend.*, 557; *Douglass* agt. *Howland*, 24 *id.*, 35; *Cooper* agt. *Dederich*, 22 *Barb.*, 516).

The force and effect of the words "for value received" were thoroughly considered in *Jackson* agt. *Alexander* (3 *John.*, 485, *marg.*). The question was whether those words were a sufficient consideration in a deed under the statute of uses, where a consideration was essential to the validity of the deed, and none had been paid in fact.

KENT, who delivered the prevailing opinion, said: "For value received is equivalent to saying money was received, or a chattel was received. It is an express averment *ex vi termini* of a *quid pro quo.*" And further on adds, "value received does, in judgment of law, imply money or its equivalent. *The grantor must be estopped by this express averment in his deed.* He admits not only a value, but a value received from the grantee; and if we will not intend this value to be something valuable or equal to a competent sum of money, we seem not to construe charters as * * * the law axiom requires them to be examined, *benignly and in support of the substance.*"

In *Jackson* agt. *Root* (18 *John.*, 60, 78), the above case was followed in adjudicating the same words. A soldier, on the back of his discharge certificate, "for value received," made over and confirmed the lands described in the certificate, and the consideration was held sufficient to raise a use.

On the principle of these authorities, the promissor (the defendant) should be *estopped* by the "express averment" of consideration in the paper signed by him.

III. A legal and sufficient consideration for the agreement is shown in the actual as well as implied request to circulate the subscription, and raise the sum of $5,000 to pay for the

improvements which had been made by his request and direction.

The plaintiff offered to show that at the outset the committee waited on the defendant and asked him to subscribe, and that he requested them to circulate the subscription through the congregation, and when they procured within $500 of the amount he would sign $500.

The proof showed that they did so circulate the paper, and then called on defendant to fulfill his promise, when he subscribed the $250.

The proof also shows that the plaintiff, through its agents the committee, spent two or three months in procuring subscriptions.

These facts bring the case within the rule in *Barnes* agt. *Perine* (2 *Kern.*, 18), before cited. The court say: "It is as if the defendant, either alone or with others, had come to the agents of the corporation and requested them to perform the acts mentioned, and delivered to them his written promise to pay a given amount as a compensation, or to enable them to do as requested" (*See also same case*, 9 *Barb.*, 202, *and* 15 *Barb.*, 250). To the same effect are *McAuley* agt. *Billinger* (20 *John.*, 89); *Farrington Academy* agt. *Allen* (14 *Mass.*, 172).

In *The Wayne and Ontario Collegiate Institute* agt. *Smith* (36 *Barb.*, 576), the court lays down this rule:

"Gratuitous promises to pay money *upon condition* or upon the happening of some event, or the doing of some act or incurring some expense, loss or legal obligation, become binding as legal and valid contracts upon acceptance and performance of the stipulated condition."

In *Hammond* agt. *Shepherd* (40 *How.*, 452), the rule cited from the above case was approved, and a note given to pay $100 without any consideration expressed in it, but which another paper recited to be *on condition* that a certain college should "hold its doors open upon all moral subjects," was held to be valid.

Even in *Stewart* agt. *Hamilton* · (1 *Comst.*, 581), judge GARDINER says: "If, with NELSON, Ch. J., we find that the defendant agreed to pay $800, provided the plaintiff would procure subscriptions and should afterward invest the money, &c.; this, according to the cases, would amount to a request to perform those services, and the defendant would be liable."

In *Hutchins* agt. *Smith* (46 *Barb.*, 235), a subscription for the purpose of enabling the subscribers to raise a fund sufficiently large to entitle the subscribers to an act of incorporation from the regents, was held valid. And it was further held that the defendant, by erasing his name, could not exonerate himself from liability.

The principle that the signing of the paper is an implied request to perform the services required by the condition, and do the other acts contemplated, is recognized in all the cases cited and numerous others (*Richmondville Union Sem.* agt. *McDonald*, 34 *N. Y.*, 379–381; *L'Amoreux* agt. *Gould*, 3 *Seld.*, 349).

The last case also decides that the agreement was not void because the instrument does not bind the plaintiff to perform the acts which form the consideration.

IV. A sufficient consideration for the agreement also appears by the testimony, in the making of the repairs to the parsonage and the erection of the new church edifice. The fact that these were done by the defendant's request and direction makes the consideration sufficient, though executed when the agreement was signed.

The defendant said by his agreement, " for value received in the improvements which I requested and controlled, and impliedly promised to assist in paying for, I agree to pay $250 to liquidate the debt which I created, on condition that the corporation will perform the service of raising $4,750 more for that purpose."

Parsons states the rule as follows :

" It may be stated, as the general rule, that a passed or executed consideration is. not sufficient to sustain a promise

founded upon it *unless there was a request for the considera-tion previous* to its being done or made" (1 *Parsons on Cont.*, 391).

"But this previous request need not always be expressed or proved, because it is often implied " (*Id.*). Again, "from what has been said it will be seen that when the consideration is wholly executed, the law implies in some cases a previous request; *provided a promise be proved* " (1 *Parsons on Cont.*, 396).

Here the promise is expressly proved. And the past con-sideration is important only *in aid* of the request for additional and future services and performance of conditions.

The following authorities also sustain the principle that where there was an express or implied request for the con-sideration a subsequent promise to pay will be upheld (*Com-stock* agt. *Smith*, 7 *John.*, 87; *Chaffer* agt. *Thomas*, 7 *Cow.*, 358; *Steenbergh* agt. *Provoost*, 13 *Barb.*, 365).

Where the debt for the payment of which the subscription is made is past due, an act done by the promisee on the faith of the subscription will sustain the promise (*Trustees* agt. *Garvey*, 53 *Ill.*, 401; *Trustees* agt. *Garvey*, 5 *Amer. R.*, 51).

V. The moral obligation resting upon the defendant to assist in paying for the new church, in which he might wor-ship as a member, and which he had requested to be built, is also an element in the consideration of the agreement (*Wil-son* agt. *Burr*, 25 *Wend.*, 386; *Goulding* agt. *Davidson*, 26 *N. Y.*, 604; *Comstock* agt. *Smith*, 7 *John.*, 87, note "*C*;" *Dusenbery* agt. *Hoyt*, 53 *N. Y.*, 521).

VI. It is a principle not to be overlooked, that in this country public policy requires such agreements to be sustained.

Parsons makes such a suggestion (1 *Pars. on Cont.*, 378).

And in a case in this state it is said, " I am by no means satisfied that in this country, where all our religious, educa-tional and charitable institutions are founded by voluntary associations and dependent upon private liberality, the per-sonal benefit to be derived from the erection of a church

Trustees of the R. P. D. Church of Rochester agt. Hardenbergh.

edifice for worship by himself and family, or the erection of an academy or other institution of learning, in his immediate neighborhood, for the education of his children, are not works involving a sufficiency of private interest to every citizen, and of pecuniary benefit, to maintain a promise distinctly and expressly made, received and acted upon in the erection of buildings for such purposes." And adds that the denial of this principle "is a view of the question altogether too narrow for this great continent, over which civilization, law, and religious and educational institutions are to be spread and maintained purely upon the voluntary principle" (*The Wayne and Ont. Col. Inst.* agt. *Smith*, 36 *Barb.*, 582).

VII. The condition expressed in the agreement, that the sum of $5,000 should be subscribed, was fully complied with, as shown by the testimony.

The amount subscribed was $5,190.50. The genuineness of the subscriptions was shown by actual proof of the signatures, and the still higher evidence of actual payments and the money in the treasury. In this way every subscription was proved except two, Jeremiah Schoonmaker, twenty-five dollars, and George Roper, five dollars, which still left an excess of $160.

The entries made by the treasurer of the society were proper evidence of these facts.

They were entries made in the course of official duty; were cotemporaneous with the acts; the person who made them was deceased; he possessed competent knowledge of the facts and it was his duty to know them; and the entries were at variance with his personal interests (*Greenleaf's Ev.*, vol. 1, secs. 147 *to* 155; *also secs.* 115 *and* 116.)

The entry is original evidence (*Sec.* 147).

The ground upon which this evidence is received is *the extreme improbability of its falsehood* (*Id.*, sec. 148).

The rule goes so far as to admit the *private books* of a deceased rector or vicar of an ecclesiastical corporation.

The reason given is, " it is not to be presumed that a person

having a temporary interest only will insert a falsehood in his book from which he can derive no advantage " (*Id.*, *sec.* 155).

The evidence having been properly received, the jury have found it to establish the fact.

VIII. The motion for a new trial should be denied and judgment affirmed, with costs.

*James M. Cooper*, attorney for defendant.

*Charles A. Fowler*, counsel.

This is an action brought to recover of the defendant $250, on the following paper: " We, the undersigned, do hereby, for value received, promise to pay to the *consistory* of the Reformed Protestant Dutch Church of the town of Rochester the several sums set opposite our respective names, for the purpose of paying off the indebtedness of said church, on condition that the sum of $5,000 be subscribed therefor. Dated January 28, 1868."

The answer is a general denial, and that the agreement was without consideration. This paper was signed by the defendant and others, and on the face of the paper there appears to have been $5,185 subscribed in all, of which $495 was subscribed after defendant's subscription was made.

The plaintiffs prove that defendant subscribed $250 and said he would pay that, and would not subscribe $500. They also were permitted to prove (under defendant's objection) subscriptions, by proving payments, and to prove payments by proving that the credits for payments were in the handwriting of John B. Van Leuven, deceased, formerly treasurer of the church; and they also proved that " the cash amount of moneys received corresponded with the subscription list." To all of which defendant objected.

They were also permitted to prove that the indebtedness resting on the church was for repairs theretofore put upon the church and parsonage under the supervision of the defendant, as one of a committee appointed by the church for that

purpose. To this evidence defendant objected. There were four witnesses called by the plaintiffs, who prove subscriptions in the aggregate to the amount of $6,823, exclusive of defendant's; but of this aggregate the subscriptions of C. Kortright, $500; L. Krom, $500; M. Kortright, $500; J. B. Van Leuven, $500; S. D. Baker, $300; B. K. Hoornbeck, $50, and Joseph Markle, $75, amounting in all to $2,425, is sworn to by both C. Kortright and L. Krom ; and the amounts proved by Duryea and Schoonmaker are also included in the lists of both Krom and Kortright, thus leaving only the amount of $4,398, or, including defendant's subscription, $4,648, proved to have been at any time subscribed. There is not the slightest proof or pretense of proof that $5,000, including defendant's subscription, had been subscribed at the time of the commencement of this action. The whole amount proved to have been paid is $4,926.74, of which $371.44 is for interest, or does not appear on the subscription paper, leaving but $4,555.30 proved in this manner ; or, including the defendant's subscription, $4,805.30. There is nowhere any evidence that "The consistory of the Reformed Protestant Dutch Church of the town of Rochester" and the plaintiffs are the same body, or represent the same religious corporation. It nowhere appears that there are not two religious bodies bearing these several names. This point was raised by the defendant on the trial.

It nowhere appears that the persons who circulated the paper were trustees of the church, or the members of any consistory, except that it does appear that John B. Van Leuven was treasurer, and that he is dead. There was no evidence that the plaintiffs, or "the consistory," agreed to use the money in the payment of the debt, or that they have so used the moneys collected. It was shown that there was no consideration whatever for defendant's promise, unless the circulation of the subscription by Krom, Kortright and Van Leuven shall be held sufficient ; and they, so far as the case shows, circulated it without authority.

I. The plaintiffs cannot recover, because they have proved no subscription to them or for their benefit. The subscription was to pay to "the consistory," and not to "the trustees;" and there is nothing unreasonable in the supposition that there are two churches in Rochester bearing these respective titles, and nothing to show to the contrary in the evidence. And it was for the plaintiffs to show that they were meant by the terms used in the subscription paper. It was a part of their affirmative case.

II. The condition on which the subscription was to become binding has not been performed. The $5,000 is not shown to have been subscribed at all; certainly not before the commencement of the action. And if it had, that was not sufficient consideration to support the promise (*Trustees Ham. Col.* agt. *Stewart*, 1 *N. Y.*, 581; *Barnes* agt. *Perrine*, 12 *N. Y.*, 30, 31).

III. The words "for value" in the paper may be contradicted, and in this case have been (*Pearson* agt. *Pearson*, 7 *Johns.*, 26; *Schoonmaker* agt. *Roosa*, 17 *Johns.*, 304; *Fowler* agt. *Shearer*, 7 *Mass.*, 14; *Boutell* agt. *Cowdin*, 9 *Mass.*, 254; *Harris* agt. *Clark*, 3 *N. Y.*, 93).

IV. There was no consideration for defendant's promise (*Hammond* agt. *Shepard*, 40 *How.*, 452; *Trustees Ham. Col.* agt. *Stewart*, 1 *N. Y.*, 581; *Barnes* agt. *Perrine*, 12 *N. Y.*, 18; *Phillips Limerick Academy* agt. *Davis*, 11 *Mass.*, 113; *Trustees, &c.*, agt. *Gilbert*, 2 *Pick.*, 579; *Wilson* agt. *Baptist Ed. Soc.*, 10 *Barb.*, 314, 315; *Richmondville Union Sem.* agt. *McDonald*, 34 *N. Y.*, 381; *Van Rensselaer* agt. *Aikin*, 44 *N. Y.*, 130).

V. A new trial should be granted, with costs, to abide the event.

NOTE.—The general term, on motion made by defendant, refused leave to go to the court of appeals.