IN RE ESTATE OF HOMER GRISWOLD.
NEBRASKA WESLEYAN UNIVERSITY, APPELLEE, V. ESTATE OF HOMER GRISWOLD, APPELLANT.

FILED MARCH 6, 1925.   No. 24329.

1. Wills: CONSTRUCTION. The subscription contract set out in the opinion is not rendered testamentary in character by the fact that payment is postponed until death of maker.

2. Subscriptions: CONSIDERATION. The assumption of an obligation, express or implied, by a university incorporated under the laws of this state, to keep an endowment fund intact and apply the income thereof to the payment of salaries and other expenses of the institution, is a sufficient consideration for a subscription to such fund in the form of a promissory note payable at the maker's death.

In re Estate of Griswold.

3. ————: OBLIGATION: IMPLICATION. The assumption of such obligation may be implied from the acceptance of such subscription.

4. Contracts: CONSIDERATION. A valuable consideration to support a contract need not be one translatable into dollars and cents; it is sufficient if it consists of the performance, or promise thereof, which the promisor treats and considers of value to him.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Claude S. Wilson* and *Albert S. Johnston,* for appellant.

*Stewart, Perry & Stewart, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD and EVANS, JJ., and REDICK, District Judge.

REDICK, District Judge.

Action upon a written subscription, in the form hereinafter set out, to the endowment fund of Nebraska Wesleyan University. The claim was duly filed in the county court, and upon appeal the jury was waived and the case submitted to the district court, and resulted in a judgment for the plaintiff, from which defendant appeals; and the case is submitted to this court upon a case stated and the briefs and arguments of the parties. A summary of the facts as agreed upon by the parties will suffice for the presentation of the questions to be reviewed.

The plaintiff, the Nebraska Wesleyan University, is a corporation organized under the statutes of this state, and carried on under the auspices and control of the Methodist Episcopal Church, for the purpose of education along the usual lines pursued by universities. It is governed by a board of trustees, seven in number, and has power under its charter and the statutes of this state to receive and hold for the purposes of the corporation real and personal property by gift, grant, will, devise, bequest, or purchase. The funds of the institution are to be applied to the erection of suitable buildings, and the payment of salaries of officers, instructors, and servants, and other expenses

connected with carrying on the work of education. The articles of incorporation were filed June 7, 1904, and since about that time the institution has been successfully carried on, having at present about 1000 students, and possessing real and personal property of the value of about $700,000, and two endowment funds of $350,000 and $1,341,000, respectively, the latter amount including the $5,000 subscription in controversy. The principal of these endowment funds is held intact, and only the income therefrom may be used for the maintenance of the institution, but such income is insufficient and has to be supplemented by contributions from persons interested in the university. From about the middle of September to midnight of December 21, 1921, the university conducted an extensive campaign at an expense of many thousands of dollars for the purpose of raising funds for the maintenance of the university, which resulted in payments and pledges in the above sum of approximately $1,341,000. During this campaign, and about 8:30 p. m. of the last day, December 21, the solicitors procured from Homer Griswold a pledge in the following words:

"Nebraska Wesleyan Endowment Fund

Estate Pledge.

"$5000. Postoffice, Uni. Place. State, Neb. Date, Dec. 21, 1921.

"In consideration of my interest in Christian education and of other subscriptions to this Endowment, Building and Expense Fund, I hereby subscribe and promise to pay to the Nebraska Wesleyan University the sum of five thousand dollars. Due and payable at my death. For value received. District—Lincoln.          Charge—Homer Griswold."

Indorsed across left side margin: "Solicitor—Smith, Roper, Bair."

This was the last pledge taken during the campaign, and at 10 o'clock that evening was included with other subscriptions to make the total fund above stated, and has ever since been carried upon the books of the university as

a part of its endowment fund, the principal of which, as was well understood by Griswold, was to be kept separate and intact, and the income only to be used in defraying the expenses of maintaining the university. At the time of making said instrument Griswold was in good health and of sound mind and under no disability or undue influence. "There was no consideration for said note other than is recited therein and as may be inferred from the making of said subscription. No monetary consideration was paid to Griswold by the claimant."

The defendant bases his argument for reversal upon two propositions:

(1) That the instrument in question is testamentary in character and not enforceable as a claim against the estate; (2) that the instrument in question was a mere executory promise to make a gift, not based upon a valuable consideration, and therefore revocable at the option of the maker, and for this reason was revoked by the death of the maker through operation of law.

As to the first proposition, we do not deem it necessary to consider it at any length, because it is conceded, and is undoubtedly the law, that if a promissory note or any other written contract is supported by a sufficient consideration the fact that performance is postponed until after the death of the promisor does not of itself give to the instrument a testamentary character so as to require execution in accordance with the statute of wills. And it must be likewise conceded that, not being a *donatio causa mortis,* the lack of a sufficient consideration would render the instrument unenforceable.

The decisive question, therefore, for our decision is whether or not the instrument in suit is supported by a sufficient consideration, and this question has been presented to the courts of many states, with somewhat varying conditions and facts, and opposite conclusions announced, and the case being one of first impression in this jurisdiction, its correct decision depends upon the proper application of general principles, and a careful analysis of

the reasons given in support of the diverse conclusions of other courts, and such other reasons as may be found of controlling or logical application to the problem.

In the first place, the note purports to have been given "for value received;" but this may be called in question by evidence of the entire transaction tending to show that in fact no consideration existed.

In *Homan v. Steele, Johnson & Co.*, 18 Neb. 652, quoting from 2 Kent's Commentaries, \*465, it is said: "A valuable consideration is one that is either a benefit to the party promising or some trouble or prejudice to the party to whom the promise is made. Any damage, or suspension, or forbearance of a right will be sufficient to sustain a promise." Many courts have given definitions in somewhat different language, but they are all, in the ultimate conclusion, reducible to the proposition contained in the above quotation, that a consideration must be something either of benefit to the promisor or a detriment to the promisee. In cases of unconditioned contributions to charitable or educational institutions, generally speaking, the benefit to the promisor consists of that which he receives as one of the general public by the carrying on of the institutions which are the object of his bounty, and the personal satisfaction consequent upon the devotion of a portion of his property to the benefit of the public; but such gifts arise merely out of the generous motives of the donor, the benefits of which furnish no legal consideration for the promise. A somewhat different situation is presented, as will appear later, when the promise is upon condition, performance of which is required of the institution. The detriment to the promisee may consist in the forbearance of a right, the incurring of some liability, or the assuming of some obligation with reference to the fund.

It is urged by plaintiff that a sufficient consideration is established by the following facts:

(1) That the claimant expended large sums of money in procuring the subscriptions.

(2) That the promise of each subscriber to the common purpose was a sufficient consideration to support the other subscriptions.

(3) That the claimant accepted said subscription and carried it on its books as a part of the endowment fund.

(4) That by such acceptance it impliedly agreed and assumed the obligation to continue the work of the university, to keep the principal fund intact, and apply the income thereof only for the support of the university.

Of these in their order:

1. There was no request, express or implied, by the donor, resulting in this expenditure, and, therefore, this consideration fails. In *Brokaw v. McElroy*, 162 Ia. 288, Evans, J., said of a similar contention: "The suggestion is quite abhorrent and we know of no legal principle to justify it. Such an expenditure cannot be deemed a consideration. Such an expenditure is essentially different in its nature and in its equity from expenditures and obligations incurred in carrying on the enterprise for which the institution was organized, in reliance upon the promise." True, it was held in *Keuka College v. Ray*, 167 N. Y. 96, that where a large subscription had been promised on condition that $20,000 be raised from others within a given time, and defendant subscribed $500 to secure the required amount, which was afterwards completed, the continued efforts of the committee to raise the required amount furnished a sufficient consideration as having been made upon request of the donor; but that is not this case. In fact, as suggested by defendant, the subscription in question was the last one obtained, and while we do not accept the argument of defendant to its full extent, on this particular point it seems conclusive that none of the expenses were incurred on the strength of this subscription.

2. That the mutual subscriptions of the donors furnished of themselves sufficient consideration each for the other is denied in this state, unless the promisee has made some expenditures or changed his situation or done some other act in reliance upon the subscriptions, or has complied with

the conditions on which they were made. *Homan v. Steele, Johnson & Co.,* 18 Neb. 652; *Armann v. Buel,* 40 Neb. 803. It would seem unnecessary to resort to the mutual promises for a consideration in such circumstances, as the incurring of expense or compliance with the condition would be sufficient. Moreover, the mutual promises referred to in those cases were those of the subscribers, while in the instant case the promises under consideration are those of the donor and donee.

The third and fourth points may be considered together, and it is in connection with these propositions that the great divergence of the authorities is met, and it will be necessary to consider as briefly as may be a number of the principal cases relied upon by the parties, and first those cited by the appellee sustaining his position that the note is supported by sufficient legal consideration.

In *Barnett v. Franklin College,* 10 Ind. App. 103, two notes were sued upon for $5,000 each, promising payment to the college, the first one, "to be used as the capital stock of said institution is used, the principal to be loaned on real estate, and the interest only to be used for current expenses of the college," and the second one containing the words, "Given to complete James Forsyth Professorship." It was alleged in the petition that these notes, or bonds, as they were called, were accepted by the college upon the terms and conditions specified, which acceptance was duly entered of record, and it was said by the court:

"This provision in the bond, and the averment of acceptance, not to speak of the further allegation that the claimant had fully performed all the conditions on its part to be performed, and had at all times been and still was ready and willing to apply the proceeds of said bonds to the purposes and objects therein specified, are sufficient of themselves, and in the absence of the averment respecting the expenditure of money, and incurring of liabilities for improvements, in anticipation of the payment of these and other bonds, to show a valid consideration for the promise contained in the instrument in suit, and to render the

In re Estate of Griswold.

complaint, * * * sufficient to withstand the demurrer."

It was further said: "The principle upon which promises of the character of those embraced in the present case are held to be valid is the reciprocal undertaking on the part of the promisor to pay and the promisee to perform something of value to the promisor, though the value may only be of indirect benefit to the latter, such as the obligation in the present case, that the appellee will hold and apply the funds promised in compliance with the terms of the contract."

And further: "The acceptance of the obligation imposed creates a trust incapable of being subsequently renounced, and which may be enforced by proper legal proceedings. Nor is it necessary that the obligation of the trustee should be performed in advance of the payment of the fund for the very purpose of the subscription is to enable such party to perform the duty imposed, and hence the mere retaining of the instrument, and the institution of suit upon the same, is regarded as sufficient *prima facie* evidence of such acceptance (citing cases)."

In *Troy Academy v. Nelson,* 24 Vt. 189, the action was brought upon a subscription paper for the raising of a fund to pay the debts of the academy, and it was held:

"The consideration for this agreement is found in the obligation imposed upon, and assumed by the trustees of this academy to see to, and make the application of this money as directed by the subscribers to this fund, so as to enable this institution to prosecute its duties of public instruction, for which it was incorporated, thus rendering this assumed liability and promise, the consideration of the promise of the other."

*Amherst Academy v. Cowls,* 23 Mass. 427, was an action upon a promissory note given for the purpose of establishing a permanent fund of $50,000 for the establishment of the college which should succeed the academy, and was given to take the place of a subscription theretofore made. While some stress is laid upon the fact that the note recognized a previous liability or obligation under the subscrip-

tion contract, the decision announces the principles contended for by the claimant, the court saying:

"Was there a consideration for this note when it was given? In one sense there was not; that is, the promisor had received nothing at the time from the payees, which was of any pecuniary value. But it is quite sufficient to create a consideration, that the other party, the payee, should have assumed an obligation in consequence of receiving the note, which he was compellable either at law or equity to perform, unless the promisor should be able to show when sued, that the payee had refused, or was unable, or had unreasonably neglected to perform the engagement on his part; in which case a defense might be raised on the ground of a failure of the consideration. * * * It certainly then would seem that every contributor to the funds of a corporation authorized by law to receive moneys and apply them to the improvement, in most essential points, of the community to which he belongs, has his recompense in his share of the public good resulting from them; and if by means of his contribution, or his solemn promise to pay, the body to whom he has pledged his word should encounter expense, become under legal obligations, *or otherwise pursue the intent and purpose* of the legislature in granting them the charter, this is a sufficient legal consideration to support such a promise."

In *Furman University v. Waller,* 124 S. Car. 68, the action was brought upon a subscription to the funds of the university through the First Baptist Church, the paper being headed "The Baptist 75 Million Campaign Pledge Card." The defense was want of consideration, but the court after holding that (1) " a subscription for a charitable purpose is merely a continuing offer to make a gift, and is unenforceable until accepted and acted upon by promisee in such a manner as to establish mutuality of obligation," further held that (2) "where promisee has, before withdrawal, accepted the subscription, agreed to apply the promised contribution to the purpose for which it was subscribed, and has assumed an enforceable obligation, con-

sideration to support promisor's agreement is supplied by promisee's enforceable obligation," and supported the second proposition by the following language in the opinion: "Where the promisee has, before withdrawal, accepted the subscription, and has expressly, or by clear implication, agreed to apply the promised contribution to the purpose for which it was subscribed, and has thereby assumed the discharge of an obligation, which may be enforced in law or in equity, the element of valuable consideration to support the promisor's agreement is supplied by the enforceable covenant of the promisee; there is then promise for promise; and therefrom springs a valid and enforceable contract."

*Irwin v. Lombard University,* 56 Ohio St. 9, was an action upon a promissory note payable to the treasurer of the university "for the endowment of said institution," and it was held:

"Consideration for a promissory note executed to an incorporated college is the accomplishment of the purpose for which it is incorporated and in whose aid the note is executed; and such consideration is sufficient."

The court, in distinguishing between a mere gift and a promise to pay upon consideration, said: "A promise to give money to one to be used by him according to his inclination and for his personal ends is prompted only by motive. But a promise to pay money to such an institution to be used for such defined and public purposes rests upon consideration. The general course of decisions is favorable to the binding obligation of such promises."

It was further said: "It is not contemplated by the parties, nor is it required by the law, that in cases of this character the institution shall have done a particular thing in reliance upon a particular promise. Not only do the law and the parties contemplate the permanency of the institution, but all promisors understand that the proceeds of their promises will be mingled with prior and subsequent donations and together constitute the financial support of the enterprise. * * * The requirements of the law are sat-

isfied, the objects of the parties secured, and the perpetration of frauds prevented by the conclusion that the consideration for the promise in question is the accomplishment, through the university, of the purposes for which it was incorporated and in whose aid the promise was made."

In *Roche v. Roanoke Classical Seminary*, 56 Ind. 198, it is held that the only defense to a subscription to the endowment fund of an institution of learning would be an abandonment by the latter of the enterprise for which it was incorporated and in aid of which the note was executed.

*Brokaw v. McElroy*, 162 Ia. 288, was upon promissory notes purporting to have been given for value received for the endowment of the Kansas City University, and Evans, J. said, *arguendo:*

"If the original promise, when made, was intended to induce activities and expenditures by the beneficiary in pursuance of the purpose of its organization, and if such activities and such expenditures were induced thereby even in part, it is a sufficient consideration."

And, further: "Such notes are frequently, if not usually, executed, not as evidence of the promise to make a future gift, but for the specific purpose of creating a present asset for its beneficiary. A very substantial part of the assets of such institutions exists in this form. To lightly withold judicial sanction from such obligations would be to destroy millions of assets of the most beneficent institutions in our land, and to render such institutions helpless to carry out the purpose of their organization."

That the acceptance by the institution is an implied promise to hold and appropriate the funds in conformity with the terms and objects of the subscription gives rise to mutual promises furnishing a sufficient consideration was held in *Ladies Collegiate Institute v. French*, 16 Gray (Mass.) 196. This is not in conflict with our holdings, because the promise here referred to is that of the donee, not the other subscribers.

A number of other cases tending to support the position of plaintiff are cited. Those above referred to are suf-

ficient to show the reasons for holding subscriptions and instruments of the character in suit to be based upon a sufficient consideration; some of the cases referred to are: *First Presbyterian Church v. Dennis*, 178 Ia. 1352; *Albert Lea College v. Brown*, 88 Minn. 524; *Collier v. Baptist Education Society*, 47 Ky. 68; *Williams College v. Danforth*, 29 Mass. 541; *Maine Central Institute v. Haskell*, 73 Me. 140; *Scott v. Triggs*, 76 Ind. App. 69.

We will now consider some of the cases taking an opposite view on the question of consideration. *Methodist Orphans' Home Ass'n v. Sharp's Exr.*, 6 Mo. App. 150, was upon a subscription for the purpose of paying the debt of the association, and it was held:

"Gratuitous subscriptions for charitable purposes cannot be enforced unless the promisee has, in reliance on the promise, done something. The mere fact that others were by the promise led to subscribe is not sufficient."

It may be remarked that, as the subscription was merely for the purpose of paying a debt already incurred, the consideration referred to in other cases of the assumption by the promisee of an obligation in connection with the subscription is absent. Though in a similar case (*Troy Academy v. Nelson*, 24 Vt. 189) it was held that the agreement to apply the fund to the purpose intended was a sufficient consideration. *University of Des Moines v. Livingston*, 57 Ia. 307, was a case in which a subscription to pay a debt already incurred was held without consideration. *Johnson v. Otterbein University*, 41 Ohio St. 527, was another case of subscription for the payment of the debts then existing of the university, and which was held without legal consideration; and, further, that the acceptance of the subscription did not give rise to a case of mutual promises in the sense requisite to constitute a consideration in law. The court refers to and distinguishes *Ohio Wesleyan Female College v. Love's Exr.*, 16 Ohio St. 20, which held that subscriptions to a college authorized by statute to receive donations, bequests, etc., and requiring them to be applied for the purposes specified in the act, or in accordance with

the designs expressed by the donors, were supported by sufficient consideration; the ground of distinction being stated as follows:

"It (the statute) names no subject of gift; and of course all things that can pass by gift are included. Gratuitous promises are not named, and, not being subjects of gift, are not included. They are left to the control of the law."

This proposition would seem, however, to be directly opposed to the later decision of *Irwin v. Lombard University, supra,* which cites the *Love* case with approval, and closes its decision with the statement:

"An examination of the digest of the decisions of the various courts of the state will show that there has been a uniform adherence to these views (expressed in the opinion) until the case of *Johnson v. Otterbein University,* 41 Ohio St. 527, was decided by the commission. A majority of the court was of the opinion that there is not such identity of facts in that case and this, that we are required to overrule it."

The lack of identity referred to, doubtless, is disclosed by the fact that in the *Johnson* case the subscription was to pay an indebtedness already contracted, while in the *Irwin* case it was to an endowment fund; a distinction easily conceivable as important upon the question of consideration. Furthermore, at the close of the decision in the *Johnson* case the court said:

"We place the reversal on these legal propositions; that the creation of a fund with which to pay the previously incurred indebtedness of the institution was not a consideration in law for the promise; and that the acceptance of the writing containing the direction to apply the fund does not, in a legal sense, give rise to a case of mutual promises."

*Cottage Street Church v. Kendall,* 121 Mass. 528, was on a subscription to build a chapel. The chapel was afterwards built, but whether in reliance upon the defendant's subscription was not considered by the lower court and the case was reversed for that reason.

*Trustees of Hamilton College v. Stewart,* 1 N. Y. 581, is specially relied upon by defendant, and was upon a subscription to a fund for the payment of the salaries of the officers of Hamilton College, and it was distinctly held that the endowment of a literary institution is not a sufficient consideration to uphold a subscription to a fund designed for that object, and that the condition that the subscribers are not bound unless a given amount shall be raised affords no implication of a request that the institution perform the services and incur the expenses necessary to fill up the subscription. It was held that the case was not one of mutual promises, because no promise by the corporation was shown; that—"The corporation do not undertake that that sum shall be subscribed, or that any other person will endeavor to procure subscriptions, or that they will make the investment or appropriate the income of the fund to the purpose designated." And it was therefore conceded, in that case, by the court that, if "the defendant agreed to pay $800 provided the plaintiffs would procure subscriptions, and should afterwards invest the money, etc., this, according to the cases, would amount to a request to perform those services, and the defendant would be liable;" which was later expressly held in *Keuka College v. Ray,* 167 N. Y. 96.

*Presbyterian Church v. Cooper,* 112 N. Y. 517, was another case of a subscription to pay off the debt of a church, and following the *Stewart* and *Kendall* cases above referred to. *Hull v. Pearson,* 38 App. Div. (N. Y.) 588, was upon a subscription to pay within six months a sum for the work of the German department of the Rochester Theological Seminary, and the court held that the promise was without consideration, in the absence of any request that the corporation do something which it would not have done except for this subscription, the court saying:

"He undoubtedly made the subscription for the purpose of aiding in promoting the work of the German department; but, in the absence of some act or word which clearly indicated that he accompanied his subscription by a re-

quest to do something which the corporation would not have done except for his subscription, there is no such request as would justify a constructive consideration in support of this promise."

The cases from New York, above referred to, are cited as authority in *Trustees of LaGrange College v. Parker,* 198 Mo. App. 372, where the action was upon a promissory note given as a subscription to the endowment fund of the college, and it was held lacking in consideration because the evidence failed to show that anything was paid to the maker of the note as a consideration therefor, or that the college had expended any money or incurred enforceable liabilities in reliance thereon. The question of the acceptance of the note by the college and its assumption of any obligation as to the application of the fund, as supplying the necessary consideration, is not discussed or referred to. There was some question as to the delivery of the note, but the case was decided upon the proposition that it was a mere promise to make a gift in the future, and, lacking what was deemed a sufficient consideration, the promise was held void.

Defendant further cites *Homan v. Steele, Johnson & Co.,* 18 Neb. 652, and *Armann v. Buel,* 40 Neb. 803, which held that the mutual promises of subscribers are supported by a sufficient consideration, *when the person or corporation for whose benefit they were made has incurred obligations on the faith of such subscriptions,* and has complied with the conditions on which they were made. There is practically no dispute as to the rule in such cases. These were both cases involving commercial transactions, and, of course, involved no discussion of the problem before us, do not purport to lay down a hard and fast rule on the subject of the consideration necessary to support a subscription, and therefore do not conclude us upon the perplexing problem with which we are engaged.

From a careful consideration of the cases cited, and many others, there seems to be no middle ground upon which we may take our stand; either the instrument in

In re Estate of Griswold.

question is a *nudum pactum,* or it is a valid contract supported by a sufficient consideration. The requirement of a legal consideration to the validity of a contract arises out of the necessity or propriety of protecting the promisor against fraud and overreaching; but the law's solicitude does not extend to the point of requiring the consideration to be of a specific character or amount, and leaves these questions, in the absence of fraud or mistake, to the determination of the parties. We are, therefore, not concerned with the particular thing, nor its value, which the promisor has considered a sufficient inducement for his promise. All that we are required to do is to ascertain that the subject-matter of the consideration is such as to warrant an inference of value to the promisor, or that he considered it of value; and it need not be pecuniary in the sense that it may be said to be worth so many dollars, but this quality may be found in the accomplishment, actual or secured by the promisor of some object or purpose which appeals to him of such importance that he is willing to pay a pecuniary value for it.

The argument of the defendant is based upon what seems to us a somewhat technical application of the rule that every contract must be supported by a legal consideration, but his position has considerable logical support. It is said that the promisor received no pecuniary benefit; that the promisee has incurred no liabilities upon the faith of the promise; that what the promisee agreed to do was not other or different from what he was required to do and would have done without the promise; that the perpetuity of the institution is not threatened by refusal to enforce the instrument; that the obligation on the promisee to preserve the principal and use the income only to pay the expenses of the college has no existence until the fund is received; that the promise was revocable at any time before the promisee did some act to its disadvantage or incurred some obligation, and that such revocation was accomplished by the death of the promisor.

In re Estate of Griswold.

On the other hand, the plaintiff contends that a valuable consideration is abundantly shown by the obligation impliedly undertaken to apply the funds to certain purposes; that such obligation is implied from the acceptance of the instrument and treating it as a part of the endowment fund; that the continuance of the functions of the university was one of the contemplated purposes of the promisor, and that this was done in reliance upon the endowment fund of which the instrument in question was a part; that the incurrence of liability for salaries and expenses since the establishment of the endowment was in dependence thereon (this is inferred from the recitals in the note and the making of the subscription); that the plaintiff is a corporation authorized by statute to receive donations for the purpose of carrying on the work of education, and that the statute and general benefits to defendant as one of the public, of the work of the institution, of themselves, are a sufficient consideration; that the promise was one upon conditions which the promisee has accepted and fulfilled and purposes to comply with in the future, which brings the case within the principle of mutual promises, the one furnishing consideration for the other.

Which route shall we follow? It seems to be contended that the obligation assumed by the promisee, to constitute a sufficient consideration, must be of a pecuniary nature. It was held, however, in *Hammond v. Shepard*, 29 How. Pr. (N. Y.) 188, that, while a note on its face containing a condition that the fund should be applied to college purposes did not show a consideration, the obligation of the college to hold its doors open for discussion on all moral subjects, imposed by a contemporary written instrument, was such as to supply a sufficient consideration. It was a condition which the promisor considered of value, compliance with which would support the promise; and this notwithstanding the fact that no opportunity for such use of the college had presented itself, the promise to do so being held sufficient.

While in the case of a mere promise to make a gift or donation to a college subject to no condition and imposing no obligation upon the college with respect thereto could not be enforced, we think that when, as in this case, the college is required to perform certain duties with respect to the specific fund, its acceptance thereof and reliance thereon and promise to carry out the wishes of the donor supply the consideration.

Defendant argues that, because the heir to this estate is a widowed sister of the deceased, the instrument in question should be set aside. It does not appear what portion of the estate is represented by this $5,000.; the natural inference is that so generous a donation to charity would import a considerable residuum, quite sufficient for the support of one collateral relative. However, may one not do what he likes with his own? If this had been a legacy in a will, could the heir be heard to contest it upon the ground stated? Except as provided by statute, an heir has no vested interest until death of the ancestor. Why, then, defeat the laudable purpose of the donor by resort to technical rules of law, not needed for his protection, in order that a mere expectancy may not be disappointed?

No difficulty is presented by the suggestion that a donor might so deplete his estate as to require his creditors to pro-rate their claims with the donee, for a contract perfectly valid between the parties may be void as to creditors. Neither does the possible deprivation of his family of their support furnish good reason for avoiding the contract, unless undue influence or mental irresponsibility is shown, which is not the case here.

It seems proper further to observe that, while the evidence does not show that the college did any specific act in reliance upon the instrument in question, this was rightly said to be unnecessary by Shauck, J., in *Irwin v. Lombard University, supra* (p. 22). Furthermore, there is no direct evidence of the expenditure of any moneys by the college in such reliance, but it appears that since the date of the instrument, December 21, 1921, to May 2, 1923, when

Homer Griswold died, the institution carried on its functions, keeping its endowment fund intact, and we think the circumstances justify and require the inference that expenses were incurred during that period in reliance upon the large endowment fund of $1,341,000. And the suggestion that the loss of the amount of the note in question would not bring about the failure of the institution is of no force, when it is considered that such a result might be possible if a considerable number of the contributors to the endowment fund should join with the defendant in his contention.

The judgment of the district court is

AFFIRMED.

Note—See Wills, 40 Cyc. 1088; Subscriptions, 37 Cyc. 489.