George W. Blomgren, Appellee, v. Fred Cowley, Appellant.

Gen. No. 37,994.

Opinion filed November 5, 1935.

Kenneth B. Kirk, of Chicago, for appellant.

Merle E. Finch, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Defendant seeks to reverse a municipal court judgment rendered in favor of plaintiff for $500 which was founded on an unpaid subscription by defendant for five shares of the capital stock of Casa Del Mar Investment Trust, a common law trust.

The facts, so far as they are essential to a consideration of the issues involved, disclose that in 1931, and prior thereto, defendant held a life membership in Club Casa Del Mar, a golf and country club, entitling him to certain privileges without payment of dues or assessments. The club had been organized on a rather extensive scale and many life memberships had been sold at substantial prices. During the early years of the depression there were not sufficient due-paying members to carry the club, and in 1930 it found itself in serious financial straits. Various methods were resorted to for raising revenue, without avail, and in the forepart of 1931 Howard D. Moses, a lawyer and president of the club, called a meeting of members and urged them to subscribe $50,000 to meet certain mortgage debts then due which could not be extended. As a means of protecting those who contributed to the fund, Moses proposed the formation of a common law trust and the issuance of certificates to the contributing members, which would become a lien on the club's property so that if the club did not eventually pay the mortgage indebtedness the trust could foreclose the mortgages and become owner of the property. A sum greatly in excess of the amount due on the mortgages had been invested in the club, and this method of saving its property to the use of the members as a club seemed both safe and expedient. The proposed plan was adopted, a syndicate or common law trust (hereinafter referred to as the trust) was formed and members subscribed for stock therein to the extent of ap-

proximately $52,000. Defendant subscribed for five shares at $100 each.

The trust took over the first mortgage on the property, and the club was given considerable further time within which to meet its indebtedness. Eventually, however, the club failed to take care of the indebtedness and it became necessary for the trust to take over the property and operate the club until a sale could be made to other parties. In all these transactions those in charge of the syndicate exercised the utmost good faith and integrity.

In June, 1931, a new club, known as Casa Del Mar Country Club, was incorporated, all properties of Club Casa Del Mar were turned over to it and it continued to operate until 1934, when, following foreclosure by the trust, the Longwood Country Club was organized. In the several reorganizations that took place, when it became necessary to form new corporations, provisions were made whereby all old club members could join the new organization on reasonable terms.

It is first urged as ground for reversal that the shares of Casa Del Mar Investment Trust were class "D" securities within the meaning of the Blue Sky Law, and that noncompliance with the act constitutes a defense to an action against defendant on the subscription agreement. Class "D" securities are by section 8 of the Securities Act (ch. 32, ¶ 261, Ill. State Bar Stats. 1935), defined as follows:

"All securities other than those falling within class 'A,' 'B,' 'C' and securities of organizations described as 'investment trusts,' and 'investment contracts,' respectively, shall be known as securities in class 'D.' "

Obviously, if the securities in question can be included in the definitions of class "A," "B," or "C" securities, they could not be classified or considered as securities in class "D." Section 5 of the act (par. 258) provides:

"Securities in class 'B,' being *exempted* sales, shall include: . . .

"(2) Securities of a corporation when sold or distributed by it among its stockholders without the payment of any commission or expenses to agents, solicitors or brokers, and without incurring any liability for any expenses whatsoever, in connection with the distribution thereof."

We think this description is applicable to the securities in the instant case. The shares in the trust were not sold to the public generally but were "sold or distributed by it among its stockholders." This is true whether the word "it" be construed to relate to Club Casa Del Mar or the syndicate subsequently organized. Moreover, it appears that the shares were sold "without the payment of any commission or expenses to agents, solicitors or brokers, and without incurring any liability for any expenses whatsoever, in connection with the distribution thereof." Plaintiff relies on *Wilder National Tavern System v. Jillson,* 256 Mich. 479, to support its contention that these securities fall within class "B." That was an action by plaintiff, an Illinois corporation, organized February 23, 1926, to recover a stock subscription. Defendant, who was interested in its formation and organization, subscribed to its capital stock. The offer to subscribe was not effective because of a change in the proposed capitalization. Thereafter, on April 3, 1926, the defendant in Michigan signed a subscription for stock to the amount of $1,050, and mailed it with his check for $100 to an officer of the company at St. Louis, Mo. The check was taken to Columbia, Illinois, the home office of plaintiff and there cashed and stock certificates executed in favor of defendant and kept by the company under the terms of the subscription. Suit was brought to recover the balance due on the subscription, and the appeal was prosecuted from a judgment in plaintiff's favor.

In its opinion the court said that the decisive question presented was whether the subscription violated the Blue Sky Law of Illinois, where it was accepted and the shares of stock executed. In a rather short opinion, from which we quote at length, the Michigan court said:

"If defendant was interested in promoting the organization of the corporation and agreed to subscribe for shares of stock therein when it was organized, then there was no violation of the blue sky law of Illinois.

"At the date of organization of the corporation defendant was in Germany and sent a radiogram, asking reservation of stock for him in the new company. The later subscription is explained by change in the capitalization.

"The case does not present an instance of sale of corporate stock to a purchaser, upon solicitation after incorporation, but a subscription by one interested in the creation of the corporation, and defendant's subscription falls within the issue of stock to organizers of the corporation.

"The Illinois blue sky law exempts from its provisions distribution of capital stock to stockholders without incurring any expenses or liability therefor, such as commission. (Cahill Rev. Stat. Illinois, chap. 32, par. 258, subd. (2); Smith-Hurd Rev. Stat. Illinois, chap. 121½, sec. 100 (2).

"The judgment is affirmed, with costs to plaintiff."

The transaction disclosed by the record in this case indicates that this was not a sale of stock within the meaning of the act. The members of Club Casa Del Mar, in order to save their own property, agreed among themselves to buy certain mortgages with which their property was incumbered. They knew precisely what they were buying, and needed no protection from the State. The only question confronting each member was how large a share of these mortgages he was

willing to buy, and that question he was perfectly able to determine for himself. It was not the purpose of the Blue Sky Law to interfere in such matters.

Defendant's main brief proceeds upon the assumption that these securities were of class "D," and cites cases holding that noncompliance with the Blue Sky Law constitutes a defense to an action on the subscription. In his reply brief he seeks to limit the exemption afforded by paragraph (2) of sec. 5 of the act to stock dividends or sales of treasury stock to those who were stockholders at the time of the sale and not to those who became stockholders by reason of the sale or distribution sought to be exempted. We do not believe that so narrow a construction can be placed upon the language employed, and regard the language of the act and the *Jillson* case hereinbefore discussed as controlling.

It is next urged that there was such a departure or deviation from the original purposes of the investment trust by those responsible for its creation as to constitute a complete failure of consideration for defendant's agreement to pay, and that the subscription was unenforceable under general principles governing the law of contracts. The subscription agreement signed by defendant and other members of the club contained only one condition, namely, that the total subscriptions must aggregate not less than $50,000 and not more than $75,000. There is no contention that this condition was violated, and it would seem therefore that defendant's agreement became absolute. The purpose of the subscriptions to the fund in question was that the contributors should purchase and take over the mortgages on the premises and give the club a reasonable time in which to pay, and in default of such payment the purchasers of the mortgage should have the same right to foreclose as the original holders thereof. In that event, defendant's life membership in the club

would of course have become worthless, and the only rights he would have in the property would be as a member of the syndicate which took over the property. In order to share in these rights, however, it would of course be necessary for him to fulfill his subscription contract. This theory is supported by the evidence of Daniel M. Flick, one of defendant's witnesses.

Defendant takes the position that he subscribed for five shares of the capital stock of "Casa Del Mar Investment Co.," and not the "Casa Del Mar Investment Trust." When the subscription was made the trust which the contract contemplated had not yet been organized, and when it was afterward formed it adopted the name "Casa Del Mar Investment Trust," instead of "Casa Del Mar Investment Trust Co." This point is not raised by defendant's pleadings, and there is no question as to the identity of the two trusts, as the affidavit of merits plainly shows. It has been held that a misnomer of plaintiff can be pleaded only in abatement, and is no ground for setting aside the proceedings. (*Springfield Consolidated Ry. Co. v. Hoeffner*, 175 Ill. 634; *Moss v. Flint*, 13 Ill. 570.) Since plaintiff's statement of claim alleged that the subscription contract was a promise to pay to Casa Del Mar Investment Trust, and defendant did not deny that allegation in his affidavit of merits and permitted the contract to be introduced in evidence upon trial without objection, he cannot now, for the first time, raise the objection of a variance between allegation and proof. (*Richelieu Hotel Co. v. International Military Encampment Co.*, 140 Ill. 248.)

Lastly, it is urged that the trial court erred in refusing to reopen the case after all proofs had been made and the court had the case under advisement, for the purpose of permitting defendant to show that since the hearing Casa Del Mar Investment Trust had sold the property in question to the Longwood Country

Club. From a legal point of view, it was utterly immaterial what Casa Del Mar Investment Trust did with the property after the foreclosure, because the members of the syndicate who had organized themselves as Casa Del Mar Investment Trust had the right to either foreclose their mortgage or otherwise acquire the property from the original club when the latter found itself unable to take care of the mortgage. Therefore, any evidence which defendant proffered as to the subsequent sale of the property in question became immaterial, and we think the offer was properly refused.

Under the circumstances of this case we think the judgment of the municipal court was properly rendered in favor of plaintiff, and it is therefore affirmed.

*Affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.