IN RE ESTATE OF GEORGE A. LUCE.
NEBRASKA WESLEYAN UNIVERSITY, APPELLANT, v. GEORGE A. LUCE ESTATE ET AL., APPELLEES.

291 N. W. 562

FILED APRIL 12, 1940. No. 30707.

*Stewart, Stewart & Whitworth* and *Charles B. Paine,* for appellant.

*De Lamatre & De Lamatre, Cranny & Moore* and *William H. Thomas, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and JOHNSEN, JJ., and FALLOON, District Judge.

ROSE, J.

This is a controversy between Nebraska Wesleyan Uni-

versity, a nonprofit corporation maintaining an educational institution by that name in Lincoln, Nebraska, plaintiff, and Elizabeth S. Gillon, defendant, over the priority of claims against the estate of George A. Luce, deceased.

In a proceeding to settle decedent's estate, the county court of Douglas county allowed the claim of plaintiff in the sum of $10,000 on a par with that of defendant Elizabeth S. Gillon for $5,433.43.

The claim of the Nebraska Wesleyan University, plaintiff, rests on a subscription or pledge to the university by George A. Luce for $10,000, due and payable at his death. The claim of Elizabeth S. Gillon, defendant, consists of a balance of $5,433.43, due her from decedent's estate on a promissory note for borrowed money. Seeking subordination of the former claim to that of the latter, defendant appealed from the county court to the district court, where her claim against the estate was decreed to be superior to that of the Wesleyan University. Plaintiff appealed to the supreme court.

Is the claim on the note for borrowed money, like other claims of the same rank, payable from decedent's estate before applying any funds therein to payment of the subscription or pledge to funds of the university, as held by the district court? This is the question presented by the appeal. Neither the county court nor the district court on appeal disallowed the claim of plaintiff. There is precedent for the sufficiency of the consideration to support the pledge as a claim against the estate of decedent. *In re Estate of Griswold*, 113 Neb. 256, 202 N. W. 609. Plaintiff contends and argues:

"The question for the court to decide was, should the university's claim be allowed or disallowed? If allowed, it automatically fell into the fourth or last class of estate claims and was, therefore, on a parity with the claim of Mrs. Gillon and any other fourth class claims."

The classification of claims upon which plaintiff relies is found in the statute relating to insolvent estates, which provides:

"If the assets which the executor or administrator may have received and which can be appropriated to the payment of debts shall not be sufficient, he shall, after paying the necessary expenses of administration, pay the debts against the estate in the following order: First. The necessary funeral expenses, which shall be a preferred claim only to an amount not exceeding Two Hundred and Fifty Dollars ($250.00) for casket and services of undertaker. Second. The expenses of the last sickness. Third. Debts having a preference by the laws of the United States. Fourth. Debts due to other creditors." Comp. St. 1929, sec. 30-615.

The view of counsel for plaintiff seems to be that the claim of the university, if valid for any purpose or to any extent, is, under the statute quoted, a debt due to a creditor whose claim is not in the first or second or third class, but is one which automatically falls into the fourth class where claims therein are all of equal rank as to order of payment. The argument on this point is made in good faith to establish what is thought to be a legal right, but it fails to take into account that, from the nature of the contract and the date of its enforceability, the pledge must be held to be conditional as a matter of necessary public policy and of implied intention and understanding between the parties. The instrument itself is in the following language:

"Nebraska Wesleyan Endowment Fund

"Estate Pledge

"$10,000          Omaha, Nebraska, December 9th, 1921

"In consideration of my interest in Christian education and of other subscriptions to this endowment, building and expense fund, I hereby subscribe and promise to pay to the Nebraska Wesleyan University the sum of Ten Thousand and no/100 Dollars due and payable at my death. For value received, subject to the following condition:

"It is understood and agreed that a discount of five per cent. will be allowed on this pledge if the same shall be fully paid prior to my death.

"Omaha District          George A. Luce
"Trinity Charge          Laura E. Luce."

George A. Luce died June 21, 1931. It was stipulated that there was no consideration for the instrument beyond what was recited therein—"my interest in Christian education" and "other subscriptions to this endowment, building and expense fund." M. E. Gilbert, executive secretary of the university from 1925 to 1932, testified that it had an endowment fund, the income from which was used only for operating expenses, and that the pledge quoted was part of the endowment fund, but on cross-examination he stated in answer to a question: "Well, the note was always listed as an asset of the endowment; of course, not being money, it could not be used until it was paid." The pledge, though contractual in form as against the pledgor, was nevertheless donative as against the other creditors of his estate. While its contractual form created an enforceable right against the decedent's personal representative and his heirs, if funds were available for the purpose, it was not a right which in good conscience should be permitted to operate to the prejudice of those who had parted with money or property to the donor in reliance upon his estate. Nor would it be possible to contend, with any degree of plausibility, that the donor, who was a minister of the gospel, in making such a pledge to the cause of Christian education, payable on his death, or a Christian university in taking it, could have intended that it should operate to leave a debit for money, which he found it necessary to borrow, or any other similar obligation, unsatisfied on his death. Under the circumstances, the pledge must be held to be conditional, both as a matter of implied intention and of sound public policy, and to be payable or enforceable only if assets are available for that purpose after the decedent's actual debts have been paid. The situation presents no difficulty in the classification of claims under the statute. It is the same as if the contract had expressly provided that nothing should be paid thereon, until all the decedent's just and legal debts had been satisfied. Conditions necessarily may be implied in contracts as a matter of sound public policy and reasonably imputed intention. Thus, it is usually recognized that

the contract of a corporation to purchase its own stock is subject to the implied condition that such contract cannot be enforced if the corporation is insolvent or if the rights of creditors are prejudiced. 13 Am. Jur. 809, sec. 787; *Fremont Carriage Mfg. Co. v. Thomsen*, 65 Neb. 370, 91 N. W. 376. Whether the claim of Wesleyan University should be allowed, with an order directing that it should not be paid until the debts of the decedent were satisfied, or whether allowance should be withheld until such debts had been satisfied, is purely a procedural question that is unimportant, since in either case the result would be the same.

*In re Estate of Griswold*, 113 Neb. 256, 202 N. W. 609, 38 A. L. R. 858, cited to sustain the position of plaintiff, does not conflict with the views herein expressed. In that case the testamentary character of the instrument and the consideration therefor were the questions discussed and determined. Infringement by donation on the rights of creditors with superior claims and the statute classifying claims against the insolvent estates of deceased persons were not involved, but to guard against even an inference that a donor by his gift might so deplete his estate as to require his creditors to prorate their claims with donee, Judge Redick, author of the opinion, made the following significant observation:

"No difficulty is presented by the suggestion that a donor might so deplete his estate as to require his creditors to prorate their claims with the donee, for a contract perfectly valid between the parties may be void as to creditors."

The judgment of the district court is in harmony with the conclusion herein reached and is

AFFIRMED.

CARTER, J., concurring.

The writers of the dissenting opinions filed in this case charge that the court has indulged in judicial legislation which permits the probate judges of this state to arbitrarily direct the allowance and payment of claims according to their personal inclinations. I challenge these statements.

There can be no question that the contract evidencing the

claim of Nebraska Wesleyan University against the estate of George A. Luce was based upon a sufficient consideration as between the parties. That a contract may have a sufficient consideration to sustain it as between the parties themselves and yet be void as to existing, *bona fide* creditors is fundamental in this state. Love and affection may constitute a sufficient consideration for a contract or conveyance, but as to *bona fide* creditors such a consideration is generally condemned where the result is to deprive existing creditors of payment.

There is no question in my mind that the claim of Nebraska Wesleyan University is a fourth-class claim under the statute. This court in its opinion does not ignore the statute, or rewrite its terms. Neither does it attempt to legislate a fifth class into the statute as charged. The majority opinion merely carries out the contract of the parties as made by them. In determining the nature of the contract and the obligations created by it, it is the duty of this court to consider not only the literal wording of the instrument, but also the facts and circumstances surrounding its execution which throw light upon the intent of the parties.

Can it be said that, if a donor writes into his pledge that the amount is to be paid only after all his just debts are paid, the courts are powerless to give effect to his contract? Will the fact that it is a fourth-class claim require the county court to prorate it equally with other fourth-class claims regardless of the express provision of the contract to the contrary? Certainly, under such circumstances the claim would be a fourth-class claim payable only when all other claims had been paid. In so doing, the contract of the parties would have been carried out without reference to the statute providing for the classification of claims.

The instant case is no different. An interpretation of the contract in connection with all the facts and circumstances surrounding its execution reveals that the parties intended the pledge to be paid after all other creditors had been satisfied, and such interpretation becomes a part of the contract by implication. Any other conclusion would force the de-

ceased donor into the position of consummating a fraud upon his creditors. An enlightened public policy requires that no such result obtain where a contrary intent may reasonably be inferred from the evidence. The contract should be interpreted to avoid such an unmoral consequence.

The case resolves itself into an interpretation of the contract and not into one involving the construction of the statute classifying claims. To place an interpretation on the contract, other than is done in the majority opinion, would leave creditors at the mercy of unscrupulous debtors. To attain such a result by judicial interpretation is abhorrent to the sound jurisprudence of this country.

The *Griswold* case, relied on in the dissents, anticipates that the situation before us would arise. The author of that opinion disposes of the question in these words: "No difficulty is presented by the suggestion that a donor might so deplete his estate as to require his creditors to prorate their claims with the donee, for a contract perfectly valid between the parties may be void as to creditors." A consistent view of the situation requires the result obtained in the majority opinion.

No one believes more strongly than the writer in the principle of the division of powers of government and the necessity of each branch to confine itself within its respective sphere. It is the function of a court, however, to interpret contracts and give them the effect intended by the parties. This, and this only, have we done.

The attempt made in the dissenting opinions to make the literal wording of the statute classifying claims the basis of the decision is without foundation. Technical refinements cannot be permitted to overcome the plain intent of the parties. No more glaring example has been before us of the truth of the statement that "the letter killeth, but the spirit giveth life."

EBERLY, J., dissents.

SIMMONS, C. J., dissenting.

The facts of this case are not in dispute. Both plaintiff and defendant have claims which have been allowed against

the Luce estate. Their proper allowance is not questioned. The estate is probably insolvent. Were it not, it is obvious this case would not be here. The majority opinion holds that the claim of the defendant is superior to the claim of the plaintiff, and that defendant's claim (as well as all other allowed claims) must be paid in full before any payment can be made on plaintiff's claim.

It must be remembered that this instrument was given in 1921. By the decision *In re Estate of Griswold,* 113 Neb. 256, 202 N. W. 609, it then became and was "a valid contract supported by a sufficient consideration." (Page 271) It not only became an asset of the plaintiff at that time, but for approximately ten years thereafter during the lifetime of the maker, the plaintiff on its part continued the full performance of the consideration for the instrument. By its terms, the instrument was payable at a discount at the option of the maker at any time after its delivery. The defendant's claim is based upon promissory notes given in 1922 and 1925 after the instrument here involved had become a binding obligation of the maker. Defendant is a subsequent creditor. The evidence negatives any fraudulent intent on the part of any party to these transactions. Both claims are unsecured. The majority, therefore, hold that, where there are two unsecured allowed claims, based upon written instruments, which are contracts supported by a sufficient consideration, the claim, junior in time of the origin of liability, is superior, and that the junior obligation must be paid in full before the senior obligation may be paid even in part. I do not agree.

The plaintiff's assignments of error raise the one general question as to the power of the court to classify defendant's claim so as to make it a preferred claim to that of the plaintiff.

The proper allowance of plaintiff's claim, as payable from the assets of the estate of deceased, is established *In re Estate of Griswold, supra.* Defendant, while admitting the force of this decision, contends that, although the claim of plaintiff may be good as against the heirs of the deceased,

it is not good as against creditors who have claims based, as is defendant's, upon money loaned to the deceased.

The applicable provisions of the Nebraska statute are as follows:

It shall be the duty of the judge "to receive, examine, adjust, and allow all lawful claims and demands of all persons against the deceased." (Comp. St. 1929, sec. 30-601.) The court shall allow time "for the creditors to present their claims for examination and allowance." (Sec. 30-603.) "On the application of a creditor" further time may be allowed. (Sec. 30-605.) A "claim of the deceased" may be exhibited "in offset to the claims of the creditor." (Sec. 30-606.) The court shall fix a time for the executor or administrator to pay "the debts and legacies of the deceased." (Sec. 30-610.) The time for the payment of "debts and legacies" may be extended. (Secs. 30-611, 30-612, 30-613.) "If, after ascertaining the claims against any estate, it shall appear that the executor or administrator has in his possession sufficient to pay all the debts, he shall pay the same in full." (Sec. 30-614.) "If the assets * * * shall not be sufficient, he shall, * * * pay the debts * * * in the following order: First. The necessary funeral expenses, which shall be a preferred claim only to an amount not exceeding Two Hundred and Fifty Dollars ($250.00) for casket and services of undertaker. Second, the expenses of the last sickness. Third. Debts having a preference by the laws of the United States. Fourth. Debts due to other creditors." (Sec. 30-615.)

"If there shall not be assets enough to pay all the debts of any one class, each creditor shall be paid a dividend in proportion to his claim, and no creditor of any one class shall receive any payment until all those of the preceding class shall be fully paid." (Sec. 30-616.) "After the expiration of the time limited for the payment of debts," the court shall order "the payment of the debts and the distribution of the assets * * * among the creditors, as the circumstances of the estate shall require, according to the provisions of this article." (Sec. 30-617.) "If an appeal shall

have been taken, and shall remain undetermined, the court * * * may order a distribution among the creditors whose claims have been allowed, leaving * * * sufficient assets to pay" the disputed claim. (Sec. 30-618.) When the disputed claim is finally settled, the court shall order it "paid out of the assets retained, to the same extent and in the same proportion as the claims of other creditors." (Sec. 30-619.)

It is evident that the legislature classified all demands against a deceased as "claims;" that, when allowed, they become "debts" payable from the assets of the estate, that, if the assets are insufficient to pay the debts, said debts shall be classified and paid in the order specified in section 30-615, Comp. St. 1929, and that, if there are insufficient assets to pay the debts of creditors in any one class, "each creditor shall be paid a dividend in proportion to his claim." The term "creditor," as used in the statute, means the person who is the claimant against the estate, and, when the "claim" is allowed, the person to whom the "debt" is payable. The statute is complete in itself and is clearly intended to cover any situation that might arise in the administration of estates in Nebraska. It necessarily follows that plaintiff's claim as well as the claim of the defendant fall within the classification of "debts due to other creditors," and that, if the estate of the deceased is insolvent, each creditor (including the plaintiff) "shall be paid a dividend in proportion to his claim" on a parity with, and not subordinate to, any other creditor whose debt is in that classification.

The following authorities support the conclusion above stated.

"In most jurisdictions the word 'claimant' is used synonymously with 'creditor,' and the word 'claim' with 'legal demand for money.' The word 'claim' is also used synonymously with 'demand,' or 'debt.' 'Creditors of the estate' have been defined as persons who are such or become such because of dealings or transactions with the decedent during his lifetime. Their claims are debts or obligations with the origin of which the personal representative had nothing to do. The phrase 'creditors of the decedent' is more appropri-

ate as a designation of such creditors, however, in order to distinguish them from persons contracting with the executor or administrator upon the credit of the latter and of the estate; for it is settled in most of the states that creditors who become such after death of the decedent need not, and cannot, present claims and must rely on the individual liability of the representative." 3 Bancroft's Probate Practice, 1351, sec. 753.

" 'Creditors' of an estate are only those who have become such because of dealings or transactions with the testator in his lifetime, concerning whose claim the personal representative has nothing to do originally." 3 Schouler on Wills, Executors and Administrators (6th ed.) 2361, sec. 2711, footnote 2.

"The priorities of debts are governed wholly by the law of the jurisdiction in which the representative acts and from which he derives his authority." 24 C. J. 418.

"The common-law order of priority still exists in so far as it has not been expressly abrogated or superseded by the local administration laws; but the power of state legislatures to regulate the priorities of claims against decedent's estates is well settled, and the common-law rules have been very generally superseded by statutes, differing widely in the various jurisdictions, classifying the debts of decedents and specifying the order in which they shall be paid, or even, sometimes, abolishing all preferences and placing all debts on an equality with respect to the right of payment. The provisions of the local statutes fixing the order of payment are mandatory; they cannot be changed or disregarded by the court or by the representative, * * *." 24 C. J. 420.

"In the modern administration of estates there are no priorities among creditors except as given by statute." 24 C. J. 422.

"If an estate is solvent, there is no need for classifying its obligations according to priorities. But if solvency is doubtful and a dividend is to be declared, or if insolvency is established. the various obligations must be classified

according to their relative standing." 3 Bancroft's Probate Practice, 1739, sec. 1037.

"The court, in classifying obligations of an estate, has no authority to change the order prescribed by statute." 3 Bancroft's Probate Practice, 1740, sec. 1037.

"We have already seen, that executors and administrators are bound, in the payment of the debts of their testators and intestates, to observe the order of priority established by law." Woerner, The Law of Decedents' Estates, 316, sec. 364.

"When the time for proving or exhibiting debts has expired, or when, in those states in which classification is determined by the time of presentation, the time for proving the preferred class has expired, it is the duty of the executor or administrator to lay before the court a complete statement of the condition of the estate, showing what assets are in his hands, and what funds immediately available for the payment of debts; also the amount of debts proved against the estate, or admitted; what claims, if any, have been presented and not allowed, or which may be in suit and remain undetermined; and all other matters necessary to enable the court to ascertain the solvency or insolvency of the estate, and determine the amount of the dividend if insolvent. The court will thereupon decree the payment of the debts which have been proved, in the order of the classes to which they were assigned, each class to be paid in full before the next inferior class receives anything; and when the assets are sufficient to pay a part, but not the whole, of the debts of any one class, the creditors of that class will be payable *pro rata.*" Woerner, The Law of Decedents' Estates, 350, sec. 401.

"After the preferred debts have been discharged, all liabilities of the deceased, of any kind or nature, not included in one of the preferred classes, are entitled to be paid *pro rata* * * *." Woerner, The Law of Decedents' Estates, 315, sec. 363.

"The rule now generally prevailing is that, aside from any preferences that may be provided for by statute, claims

of creditors against a decedent are, in case of the insolvency of his estate, to be paid *pro rata.*" 21 Am. Jur. 622, sec. 423.

"Once the assets have been applied in payment as far as they will go down the range of priority classes, claims in the last class to be reached can only be paid *pro rata.*" 3 Bancroft's Probate Practice, 1736, sec. 1035.

"Within any particular class of claimants, no one is entitled to preference over any other; * * *." 3 Bancroft's Probate Practice, 1737, sec. 1035.

Now let us consider the majority opinion.

It first holds that plaintiff's claim rests upon an instrument "due and payable" at death. As above pointed out, at the option of maker it was payable during his lifetime. The importance of this distinction is apparent. The majority next state: "The view of counsel for plaintiff seems to be that the claim of the university, if valid for any purpose or to any extent, is, under the statute quoted (sec. 30-615, Comp. St. 1929), a debt due to a creditor whose claim is not in the first or second or third class, but is one which automatically falls into the fourth class where claims therein are all of equal rank as to order of payment." Nothing in plaintiff's brief justifies the inference that plaintiff doubted that its claim was "valid for any purpose or to any extent." On the contrary, plaintiff contends that its claim is valid for all purposes. If the plaintiff's claim (and the defendant's also) does not fall "in the fourth class where claims * * * are all of equal rank as to order of payment," where, *under our statute,* does it fall? The majority opinion does not answer that question, and it should be answered. There is no other statutory class into which either the plaintiff's or the defendant's claim can fall, and within that class, there is no distinction and no priority. This court has no right or power to create an additional classification, or to create priorities within a class. (See authorities cited herein.) It is axiomatic that courts do not have legislative powers.

It is a "fundamental principle that the courts cannot set aside valid legislative acts or engraft amendments upon

them merely because the judges deem the legislation unwise or even unjust." *Paxton v. Sutton,* 53 Neb. 81, 73 N. W. 221. Is not the court doing exactly that in the instant case?

Contrary to the statement in the majority opinion, the plaintiff does not rely upon the *Griswold* case to sustain its position that it is entitled to payment on a parity with the defendant. It relies upon that case to sustain its position that it has a claim properly allowed based upon a contract supported by a sufficient consideration and one that it has performed. It relies upon the statutes of this state to sustain its position that the claim is entitled to be paid *pro rata* with the claim of the defendant.

The majority opinion states that "Infringement by donation on the rights of creditors with superior claims and the statute classifying claims against the insolvent estates of deceased persons were not involved" in the *Griswold* case. Agreed. But who determines what are superior claims —this court or the legislature? The authorities state that the legislature has that power, and our legislature has said what claims shall be superior to the one here in question by giving preference to (1) funeral expenses, (2) expenses of the last sickness, (3) debts having a preference under the laws of the United States. No other statutory preference exists. In my opinion, a preference is specifically denied by section 30-616, Comp. St. 1929.

The majority opinion states that plaintiff's claim should not be paid until "after decedent's *actual* debts have been paid" and until "decedent's *just* and *legal* debts" have been satisfied. How is plaintiff's allowed claim distinguished from an "actual" "just" or "legal" debt? By statute, hereinbefore cited, an allowed claim is a debt of the estate. Obviously, plaintiff's claim should not have been allowed unless it was an actual legal claim, which, when allowed, became an actual legal debt of the estate. Defendant does not appeal from the allowance. This court should not place plaintiff in the position of presenting a fictitious, unjust, illegal claim, of having it allowed, and then insisting upon payment. Yet, it must be conceded that, in order to sus-

tain its reasoning, the majority opinion places plaintiff in such a position.

The majority state that plaintiff's argument "fails to take into account that, from the nature of the contract and the date of its enforceability, the pledge must be held to be conditional as a matter of necessary public policy and of implied intention and understanding between the parties." Let us examine that. The parties to the instrument were a minister of the gospel and an institution of higher learning in this state. They were fully competent to express their intent in the written contract, which the one executed and the other accepted and performed. Their contract was valid, legal, and enforceable as written. (See *Griswold* case.) This court now, 18 years later, writes into that contract a condition, based upon "an implied intention and understanding," that the maker's estate was not to be liable therefor until all other claims were fully paid. This court has said: "While a court may construe and enforce contracts duly entered into, it is not the province of the judiciary to make contracts for parties." *TePoel v. Shutt*, 57 Neb. 592, 78 N. W. 288. In my judgment, the majority are now making a new contract for the parties after one is dead and the other has performed.

The majority state the condition is there "as a matter of necessary public policy." The public policy of this state, as declared by the cited legislative provisions, is controlling upon the courts. The courts have no right to ignore or override that declared public policy.

In *State v. Price*, 129 Neb. 433, 441, 261 N. W. 894, this court quoted with approval the following from *Mieyr v. Federal Surety Co.*, 97 Mont. 503, 34 Pac. (2d) 982: "What is the 'public policy' of a state and what is contrary to it is not to be measured by the private convictions or notions of the persons who happen to be exercising judicial functions, but by reference to the enactments of the lawmaking power, and, in the absence of them, to the decisions of the courts. When, however, the legislature has spoken upon a particular subject and within the limits of its constitutional powers, its utterance is the public policy of the state."

"No duty of this court is more manifest and exacting than the duty to avoid trespassing upon the province of the legislature. * * * It is not for this court to determine the legislative policy, nor to criticize that policy when adopted by the lawmakers. If apparently matters have been omitted in legislation which would have been supplied if brought to the attention of the lawmakers, it is not within the province of the court to supply such omissions." *Gaster v. Estate of Gaster,* 92 Neb. 6, 137 N. W. 900.

Subsequently in the opinion the majority repeat their statement about "implied" conditions, "sound public policy," and "imputed intentions," but do not cite any authority, judicial or statutory, to sustain their position. I am not unmindful that the majority state: "Thus, it is usually recognized that the contract of a corporation to purchase its own stock is subject to the implied condition that such contract cannot be enforced if the corporation is insolvent or if the rights of creditors are prejudiced." (Citing 13 Am. Jur. 809, sec. 787.) However, this is not a contest between a stockholder and a creditor. It is a contest between two creditors who have allowed claims which fall into the same statutory classification. Obviously, the cited authority is not in point. The majority also cited *Fremont Carriage Mfg. Co. v. Thomsen,* 65 Neb. 370, 91 N. W. 376. It is interesting to note that in that case the corporation was not insolvent, and the stockholder recovered on his contract of repurchase. So, I submit that the majority opinion stands without support of any authority. Surely, if the reason of the majority is sound, judicial decision could be found to support it.

The fault with the majority opinion is that it adopts the argument and reasoning that was rejected in the *Griswold* case, and, contrary to that decision, treats the Luce note as a gift, without a consideration, and not as a valid contract based upon a sufficient consideration. For the majority next state: "The pledge, though contractual in form as against the pledgor, was nevertheless donative as against the other creditors of his estate. While its contractual

form created an enforceable right against the decedent's personal representative and his heirs, if funds were available for the purpose, it was not a right which in good conscience should be permitted to operate to the prejudice of those who had parted with money or property to the donor in reliance upon his estate." Again no citation of authority is given. What is the effect of this statement? First, as between the plaintiff and the beneficiaries of the estate of the "pledgor," the instrument is a contract founded on a sufficient consideration. (Such is the holding in the *Griswold* case.) Second, as between the plaintiff and the defendant (another creditor), the instrument was a donation, a gift. A gift is a voluntary transfer of property "without any consideration." A gift "not only does not require a consideration, but there can be none; if there is a consideration for the transaction it is not a gift." 28 C. J. 620. It is obvious that the instrument cannot be both a contract based upon a sufficient consideration and a gift without any consideration. Yet the majority reason that this instrument is a valid contract, the proper foundation for a claim allowable against the estate, and a gift not good as against "other creditors." Not only is that so, but the question of whether it is a contract or a gift is made to depend not upon anything said or done by the parties at the time the instrument was executed, but upon the question as to whether or not the maker's estate is solvent 11 years after the contract "and/or" gift was made. The majority reach the somewhat remarkable conclusion that, if the estate is solvent, then this instrument is a contract based on a sufficient consideration, and if the estate is insolvent, then it is a gift without consideration, good as against heirs, but not good as against "other creditors." Such a result is not based upon either good reasoning or good law.

The syllabus likewise classifies the plaintiff's claim as "a pledge or donation," refuses to recognize its status as a debt of the estate, contrary to the holding in the *Griswold* case, and refuses to recognize its statutory status as an allowed debt of the estate.

But in any event, the plaintiff has an allowed claim against the estate. Defendant has an allowed claim against the estate. The majority cite section 30-615, Comp. St. 1929, which provides that "debts due to other creditors" are in the fourth class. The majority, ignoring the fact that the legislature provided no priorities within that class, construe the instrument to create priorities within the class and state: "The situation presents no difficulty in the classification of claims under the statute." If well-defined and long-established rules cited herein are to be ignored, then I admit no difficulty is presented.

However, the majority entirely ignore section 30-616, *supra,* which provides: *"If there shall not be assets enough to pay all the debts of any one class, each creditor shall be paid a dividend in proportion to his claim."* By section 30-617, *supra,* the county court is required to make an order for the payment of debts "according to the provisions of this article." I have heretofore quoted from several recognized authorities all to the effect that the statutory provisions are mandatory, that legislative classifications are controlling, and cannot be changed or disregarded by the courts, and that, in case of insolvency, creditors within a class are to be paid *pro rata.* Our statute is in accord with those texts. The majority cite no authorities to the contrary. Is every one out of step, including our legislature, and excluding a majority of this court? Where is the authority for this court to ignore the statutes classifying claims and providing for *pro rata* payment within a class?

Bearing in mind the fact that plaintiff's claim is an allowed claim or debt of the estate, is not the effect of the majority decision to set aside that allowance and allow the claim conditioned upon there being assets in the estate from which it can be paid after all other allowed claims are paid? If so, where is the authority, statutory or otherwise, for this court to enter such an order?

If this court has the power to create classes A and B within the statutory claims of the fourth class and put all claims except the plaintiff's in class A, then what is to pre-

vent the court from hereafter creating as many subclasses as there are claims, and ordering their payment in the order that the court may deem wise and just and in accord with a "necessary public policy?" Does not the court thereby invade a field that has been fully covered by legislative provisions? Does it not in effect repeal the statutory order of payment of claims? Has not this court violated the constitutional injunction that "no person or collection of persons being one of these departments (legislative, executive and judicial) shall exercise any power properly belonging to either of the others except as hereinafter expressly directed or permitted?" Const. art. II, sec. 1. Where is the direction or permission to this court to invade this field wherein the legislature has fully directed what shall be done?

In my opinion, the courts do not have the authority to enter the order here affirmed. We should not disturb the probate law of this state with reference to the classification of claims in order to prevent what, to some of us, appears to be an inequitable result. If this opinion becomes the law of Nebraska, then every probate judge will feel that he has the right to determine "as a matter of necessary public policy" whether or not the payment of one claim in an insolvent estate should be preferred to another, and instead of having an orderly payment of claims, based upon the statutes, we will have the payment of claims based upon the personal views of the 93 probate judges of this state.

MESSMORE, J., dissenting.

I agree that the subscription, note or pledge made to Nebraska Wesleyan University by George A. Luce for $10,000, due and payable at his death, does, as stated in the majority opinion, constitute a just and enforceable claim against his estate. Under section 30-615, Comp. St. 1929, it is a claim which would fall within the fourth class. The majority opinion states: "It was not a right which in good conscience should be permitted to operate to the prejudice of those who had parted with money or property to the donor in reliance upon his estate," and that such pledge or

donation to the fund of the university, payable after the death of the donor, under the facts set out in the opinion is subject to the implied condition that it is not to be paid until the debts of donor's estate have been satisfied.

The contract provides: "In consideration of my interest in Christian education and of other subscriptions to this endowment, building and expense fund (an adequate consideration), I hereby subscribe and promise to pay to the Nebraska Wesleyan University the sum of Ten Thousand and no/100 Dollars due and payable at my death (a direct promise to pay from the assets of his estate at a given time,—his death). For value received," etc.

The majority opinion, in substance, says that in equity and good conscience this debt should be subsequent to and follow after, as far as allowance or payment is concerned, debts admittedly in the same class, the exception being that where money was advanced and used by the decedent during his lifetime such obligations against his estate precede claims of the kind in question.

The language used in section 30-615, Comp. St. 1929, is unambiguous, direct and complete, and fully discloses the classification of claims. To interpret such provision as stated in the majority opinion is tantamount to judicial legislation, in creating a fifth class of claims, or an exception to the specific language of the statute. The language of the statute under the fourth classification is: "Debts due to other creditors." This could have only one meaning: All debts owing by the estate to all other creditors, not specifically excepted by the preceding provisions of the statute, fall within the category of fourth-class claims.