Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/28/2019 09:07 AM CDT

In re Estate of Wayne L. Ryan, deceased.
Shadow Ridge Limited Partnership, a Nebraska
limited partnership, appellant, v. Steven Ryan,
Personal Representative of the Estate of
Wayne L. Ryan, deceased, appellee.

___ N.W.2d ___

Filed April 5, 2019.    No. S-18-799.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** An appellate court reviews a trial court's order granting a motion to dismiss de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Motions to Dismiss: Pleadings.** A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the claim's substantive merits.

3. ____: ____. To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.

4. **Decedents' Estates: Claims: Time.** The Nebraska Probate Code requires that all claims, whether absolute or contingent, be presented within certain time periods or be barred against the estate.

5. **Actions: Charities: Contracts: Consideration.** An action on a note given to a church, college, or other like institution, upon the faith of which money has been expended or obligations incurred, generally cannot be successfully defended on the ground of lack of consideration.

6. **Charities: Contracts: Intent.** Charitable subscriptions often serve the public interest by enabling projects which otherwise could not occur and are thus construed, if reasonably possible, to support recovery.

7. **Contracts: Estoppel.** Recovery on a theory of promissory estoppel is based upon the principle that injustice can be avoided only by enforcement of a promise.

8. **Forbearance: Estoppel.** Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action

or forbearance is binding if injustice can be avoided only by enforcement of the promise.

9. **Estoppel.** Under Nebraska law, the doctrine of promissory estoppel does not require that the promise giving rise to the cause of action must meet the requirements of an offer that would ripen into a contract if accepted by the promisee.

Appeal from the County Court for Douglas County: Lawrence E. Barrett, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Thomas M. Locher and Kevin J. Dostal, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., for appellant.

Marnie A. Jensen and Kamron T.M. Hasan, of Husch Blackwell, L.L.P., and William J. Lindsay, Jr., and John A. Svoboda, of Gross &Welch, P.C., L.L.O., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

In a decedent's probate proceeding, a golf course partnership sought to enforce a claim based upon an unfulfilled pledge agreement, relying alternatively upon contract and promissory estoppel theories. The probate court dismissed both theories for failure to state a claim. Because the partnership is not a charitable, educational, or like institution, it failed to state a claim based on contract. But because it alleged having expended substantial funds in reliance upon the pledge—which must be accepted as true—it stated a claim based upon promissory estoppel. We affirm in part, and in part reverse and remand for further proceedings.

## BACKGROUND

### Pledge Agreement

In 2016, Wayne L. Ryan entered into a written "Pledge Agreement" with Shadow Ridge Limited Partnership, a

Nebraska limited partnership (Shadow Ridge). The signature block identified Ryan as "Donor" and Shadow Ridge as "Donee." According to the agreement, Ryan would make a total gift of $20 million so that Shadow Ridge could make improvements to the golf course it operated. In the agreement, Ryan stated that he had resided along the golf course for 23 years and had "great pride and affection" for it. His intent in providing funds, as stated in the agreement, was to "develop the golf course into one of the top-rated golf courses in the entire Midwest" and to make it "become a significant asset to the City of Omaha in much the same manner as the Omaha Henry Doorly Zoo, the TD Ameritrade Ball Park and other similar civic improvements which attract people to visit and reside in the City of Omaha."

According to the pledge agreement, "[Ryan] has discussed a number of improvements which [Shadow Ridge] would like to make to the Shadow Ridge Golf Course in order to provide the underwriting that is appropriate to meet the goals and objectives generally set forth in this Pledge Agreement." The improvements were set forth in an attachment to the pledge agreement and were incorporated by reference. The 11-page attachment detailed $12.5 million in capital improvements. Because recognizing Ryan's contributions would "be paramount to this endeavor," Shadow Ridge would construct and name a golf performance center after Ryan and place a bronze statue in Ryan's honor at the first tee.

The pledge agreement stated that "in consideration of the foregoing Recitals and the mutual promises hereinafter set forth, [Ryan] hereby agrees to provide the gratuitous transfers hereinafter described . . . , subject to the conditions set forth in paragraph 3 below." Paragraph 3, titled "Conditions," stated that the intended transfers were "specifically subject to" two conditions. One condition was the resolution of specified litigation in Sarpy County, Nebraska, and the eventual sale of the stock or assets of "Streck, Inc.," to an independent third party for fair value. The other condition was the

agreement of Shadow Ridge "to pay the anticipated transfer taxes attributable to the transfers contemplated by this Pledge Agreement (gift taxes reportable on IRS Forms 709) so that the practical result of the intended transfers is that they will be properly characterized as a net gift for federal gift tax purposes."

## PROBATE PROCEEDINGS

Ryan died in 2017. Shadow Ridge filed a statement of claim against the estate of Wayne L. Ryan (estate) for the $20 million pledge agreement. The claim disclosed that payment was contingent on the resolution of the Sarpy County case. The estate denied the claim.

Shadow Ridge filed a petition for allowance of claim and attached the pledge agreement. According to the petition, Ryan "enjoyed 'Founding Membership' status with Shadow Ridge at the time of the execution of the Pledge Agreement." Shadow Ridge alleged that in reliance upon Ryan's pledge, it had incurred expenses in beginning improvements specified in the agreement. It claimed that the pledge agreement was an enforceable obligation that was binding against the estate. Alternatively, Shadow Ridge alleged that the petition should be granted under a promissory estoppel theory. Shadow Ridge conceded that the contingency in the pledge agreement concerning the Sarpy County case had not occurred, but asserted that it would likely occur prior to the distribution of the estate.

## DISMISSAL

The estate moved to dismiss the petition for failure to state a claim. The probate court thereafter dismissed the petition with prejudice, finding that the petition failed to state a claim upon which relief may be granted and that no future amendments to the petition would be successful. The court's order stated: "The conclusion of the . . . litigation in Sarpy County is a prerequisite before the intended gifts could be made by . . . Ryan. [He]

has died and no gifts were made to [Shadow Ridge] before his death."

Shadow Ridge filed a timely appeal, and we granted the estate's petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Shadow Ridge assigns that the court erred in dismissing its contract claim based upon the pledge agreement and in dismissing its claim based upon a promissory estoppel theory.

## STANDARD OF REVIEW

[1] An appellate court reviews a trial court's order granting a motion to dismiss de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[1]

## ANALYSIS

### Principles of Law Regarding Motion to Dismiss

[2,3] We begin by recounting principles governing motions to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6). A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the claim's substantive merits.[2] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.[3] In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of

---

[1] See *Sandoval v. Ricketts, ante* p. 138, 922 N.W.2d 222 (2019).

[2] See *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017).

[3] *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018).

the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.[4] At this stage, the question boils down to whether, after accepting the well-pleaded facts as true, Shadow Ridge's petition stated either a claim on a contract or a claim for promissory estoppel.

## CONTINGENT CLAIMS

The transfers of money set forth in the pledge agreement were subject to two conditions. The estate argues that Shadow Ridge's claims fail due to the nonoccurrence of conditions precedent. Here, we disagree.

A condition precedent includes a condition which must be fulfilled before a duty to perform an existing contract arises.[5] There is no dispute that the conditions set forth in the agreement have not occurred. But this was not an action against Ryan to compel payment of an obligation; here, Shadow Ridge seeks to preserve its claims against Ryan's estate in the probate proceeding resulting from Ryan's death.

[4] The Nebraska Probate Code requires that all claims, whether absolute or contingent, be presented within certain time periods or be barred against the estate.[6] Neb. Rev. Stat. § 30-2492 (Reissue 2016) specifically addresses the disposition of contingent claims:

(a) If a claim which will become due at a future time or a contingent or unliquidated claim becomes due or certain before the distribution of the estate, and if the claim has been allowed or established by a proceeding, it is paid in the same manner as presently due and absolute claims of the same class.

(b) In other cases the personal representative or, on petition of the personal representative or the claimant in a

---

[4] *Burklund v. Fuehrer*, 299 Neb. 949, 911 N.W.2d 843 (2018).

[5] *Weber v. North Loup River Pub. Power*, 288 Neb. 959, 854 N.W.2d 263 (2014).

[6] See Neb. Rev. Stat. § 30-2485 (Reissue 2016).

special proceeding for the purpose, the court may provide for payment as follows:

(1) if the claimant consents, he may be paid the present or agreed value of the claim, taking any uncertainty into account;

(2) arrangement for future payment, or possible payment, on the happening of the contingency or on liquidation may be made by creating a trust, giving a mortgage, obtaining a bond or security from a distributee, or otherwise.

This statute treats contingent claims differently, depending upon whether the contingency is resolved before distribution of the estate. If it is, the claim is paid pursuant to the rules governing payment of claims of the same class.[7] If not, the statute anticipates that the probate court will craft an equitable solution to dispose of the contingent claim.[8]

Here, it is not clear which subsection of § 30-2492 may ultimately apply. Shadow Ridge alleged that the contingency of the resolution of the litigation would likely occur prior to distribution of the estate. But it asserted that if the contingency had not occurred prior to the distribution of the entire estate, the claim should be paid under § 30-2492(b). To the extent Shadow Ridge argues that it must then be paid even if the contingencies have not been met, we disagree. If a claim's contingencies remain unmet at the time of an estate's distribution, § 30-2492(b) provides a probate court with a wide range of tools to achieve a just result. And depending upon the situation then, a contingency may be so unlikely of being performed as to justify only minimal provision for future payment.

Regardless of which subsection may apply, our probate code compelled Shadow Ridge to assert its claim against the estate even though it remained contingent. Thus, the contingencies'

---

[7] See Neb. Rev. Stat. § 30-2487 (Reissue 2016) (classifying claims).

[8] See § 30-2492(b).

unfulfilled status did not automatically defeat the claim. We turn to the alternative theories raised by Shadow Ridge.

## Contract

Typically, a promise to make a gift in the future is not legally enforceable.[9] Long ago, this court recognized that a promise to make a gift in the future is ordinarily unenforceable, even when put in the form of a promissory note.[10] But in charitable giving cases, courts frequently find such future promises to be enforceable as a pledge or subscription.[11] "A 'subscription contract' or 'subscription,' as it is often called, is not a gift, but is a contract, oral or written, by which one engages to contribute a sum of money for a designated purpose, gratuitously, as in the case of subscribing to a charity."[12]

[5] Here, Shadow Ridge sought to have the pledge agreement enforced as a contract. A contract requires an offer, acceptance, and consideration.[13] The general rule is that a subscription to a charitable or other institution must be supported by a consideration in order to be a binding obligation.[14] But an action on a note given to a church, college, or other like institution, upon the faith of which money has been expended or obligations incurred, generally cannot be successfully defended on the ground of lack of consideration.[15] In such cases, although the note is characterized as a gift or donation, the expenditure of money or assumption of liability by the

---

[9] See *Ferer v. Aaron Ferer & Sons Co.*, 273 Neb. 701, 732 N.W.2d 667 (2007).

[10] See *Ricketts v. Scothorn*, 57 Neb. 51, 77 N.W. 365 (1898).

[11] See William A. Drennan, *Charitable Naming Rights Transactions: Gifts or Contracts?* 2016 Mich. St. L. Rev. 1267 (2016).

[12] 83 C.J.S. *Subscriptions* § 1 at 615 (2010).

[13] See *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 708 N.W.2d 235 (2006).

[14] *Trustees of Baker University v. Clelland*, 86 F.2d 14 (8th Cir. 1936).

[15] *Ricketts v. Scothorn, supra* note 10.

donee in reliance on the promise constitutes a valuable and sufficient consideration.[16]

[6] Charitable subscriptions often serve the public interest by enabling projects which otherwise could not occur and are thus construed, if reasonably possible, to support recovery.[17] This court has found valid consideration for a pledge or subscription note to an educational institution[18] and to a church.[19]

Shadow Ridge did not plead that it is a "church, college, or other like institution."[20] Rather, it is a Nebraska limited partnership that operates a golf course known as Shadow Ridge Country Club. There is no allegation that Shadow Ridge is open to the public or is a nonprofit entity. By definition, a country club often has restricted membership.[21]

Our research did not uncover any cases addressing the enforceability of a pledge agreement in favor of a for-profit entity. Shadow Ridge cited an Illinois case[22] involving a golf and country club, but it is distinguishable. In that case, which involved securities regulation, the promisor already held a life membership in the club and pledged money to protect his own property. There is no allegation that Ryan held a similar ownership interest in Shadow Ridge.

We conclude that the absence of cases enforcing pledge agreements in favor of profitmaking entities is not mere

---

[16] See *id.*

[17] See 83 C.J.S., *supra* note 12, § 3.

[18] See, *Nebraska Wesleyan University v. Estate of Couch*, 170 Neb. 518, 103 N.W.2d 274 (1960); *In re Estate of Luce*, 137 Neb. 846, 291 N.W. 562 (1940); *In re Estate of Griswold*, 113 Neb. 256, 202 N.W. 609 (1925).

[19] See *Continental Co. v. Eilers*, 134 Neb. 278, 278 N.W. 497 (1938).

[20] See *Ricketts v. Scothorn, supra* note 10, 57 Neb. at 56, 77 N.W. at 366.

[21] "Country club," Oxford English Dictionary Online, http://www.oed.com/view/Entry/381763 (last visited Mar. 29, 2019).

[22] *Blomgren v. Cowley*, 282 Ill. App. 166 (1935).

happenstance. "[F]rom early times academies, colleges, missionary enterprises, churches, and other similar institutions for the public welfare, have been established and often maintained upon private donations and subscriptions."[23] Some early cases advanced the view that "a subscription to charity was purely gratuitous,—a nudum pactum, not enforceable at law,—and performance was left to the conscience and honor of the subscriber."[24] But many courts, including this court, began to enforce eleemosynary subscriptions.[25] This change flowed from a commendable regard for public policy and a desire to give stability and security to institutions dependent on charitable gifts.[26]

Because Shadow Ridge is not an entity for the public good like a charitable or educational institution, its petition premised on contract principles failed to state a claim upon which relief may be granted. We conclude the probate court did not err in granting the motion to dismiss as to the contract claim.

### PROMISSORY ESTOPPEL

[7,8] Shadow Ridge alternatively alleged that its claim should be granted under a promissory estoppel theory. Recovery on a theory of promissory estoppel is based upon the principle that injustice can be avoided only by enforcement of a promise.[27] Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise.[28]

---

[23] Annot., 38 A.L.R. 868, 869 (1925).

[24] *Id*. at 869.

[25] See *In re Estate of Griswold, supra* note 18.

[26] See 38 A.L.R., *supra* note 23.

[27] *Blinn v. Beatrice Community Hosp. & Health Ctr., supra* note 13.

[28] *Id.*

[9] Under Nebraska law, the doctrine of promissory estoppel does not require that the promise giving rise to the cause of action must meet the requirements of an offer that would ripen into a contract if accepted by the promisee.[29] Under this theory, the main focus is on reasonable reliance. And here, we are reviewing only a dismissal for failure to state a claim.

At this stage, we must view the facts alleged by Shadow Ridge as true and draw all reasonable inferences in its favor. Shadow Ridge alleged that Ryan promised to give it $20 million "for the purposes specified in the Pledge Agreement." It claimed that Ryan reasonably expected the promise of money to induce Shadow Ridge to incur expenses for the purposes identified in the pledge agreement, that it was foreseeable Shadow Ridge would incur substantial expenses in reliance upon Ryan's promise, and that Shadow Ridge reasonably relied on the promise to incur substantial expenses.

Shadow Ridge's last allegation—that it had incurred substantial expenses in reasonable reliance upon Ryan's pledge agreement—is the heart of this theory. Based upon its assertion of facts supporting promissory estoppel, Shadow Ridge has adequately stated a claim on its alternative pleading. The probate court erred in dismissing the claim in the petition based on promissory estoppel.

## CONCLUSION

Because Shadow Ridge is not a charitable, educational, or like institution, its attempt to enforce the pledge agreement as a contract fails. And we affirm the probate court's order to that extent. However, accepting as true all well-pleaded facts and drawing all reasonable inferences in Shadow Ridge's favor, Shadow Ridge has stated a claim upon which relief may be granted under a promissory estoppel theory. Of course, the truth of Shadow Ridge's allegations, as well as any defenses

---

[29] *Id.*

the estate may assert, has not been determined. Contingencies admittedly exist. Our decision today should not be misunderstood to mean that Shadow Ridge's claim must ultimately prevail. Its success or failure depends upon the proceedings that will follow our remand. We reverse the probate court's dismissal as to the promissory estoppel theory of Shadow Ridge's claim and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

MILLER-LERMAN, J., not participating.